# GOLDSMITH v. HOLLAND BUILDING COMPANY, Appellant.

### Division One, June 20, 1904.

1. **ELEVATOR: Common Carrier: Passenger.** The owner of a general office building in maintaining an elevator therein becomes a common carrier of passengers, and an employee of a tenant in that building, in passing to a water closet therein, is a passenger for hire on the elevator.

2. ——: ——: **Care: Use of Word "Very."** The owner of an office building in which is an elevator, although not an insurer of the safety of passengers on the elevator, is required to use such care, prudence and caution to prevent injury to passengers as a very careful and prudent person would use and exercise in a like business and under similar circumstances. And the use of the word "very" before "careful" does not impose any higher degree of care than the law requires.

3. ————: **Metal Projection: Contact With Passenger's Dress: Knowledge: Causal Connection With Injury.** The elevator did not have doors but the doors were in the walls of the hatchway, and were opened automatically in front of an opening in the elevator, and to set in operation the automatic appliance there was a metal arm or projection which stuck out from the floor about three-quarters of an inch directly in front of the open side of the elevator cage, which came within three-quarters of an inch of the floor of the elevator, and this feature of the elevator had been reported by an expert examiner to the manager three weeks before the accident and the removal thereof recommended. The evidence was that such projection was very likely to catch the clothing of the passengers on the elevator as it passed, and that plaintiff's dress caught on some projection and she was in consequence seriously injured. *Held,* first, that these facts show negligence on the part of the defendant in maintaining the appliance; and, second, that from these facts the jury were justified in finding a causal connection between the negligence and the injury.

4. **NEGLIGENCE: Damages: Excessive.** Plaintiff, a young woman, earning her livelihood to the best of her ability, was permanently and seriously injured while a passenger on defendant's elevator. She suffered much, spent months in bed, was in the hospital, twice operated upon by competent surgeons, for over a year has been unable to walk or bear her weight on her foot, and the prospects are that she will not likely ever be relieved. *Held,* that a verdict of $8,500 is not excessive.

5. **PRACTICE: Amending Petition.** In an action for damages for injuries received while a passenger on an elevator, the court, at the close of the whole case, permitted plaintiff to amend her petition, by interlineation, by adding the words, "the defendant knew or by the exercise of a high degree of care would have known" that the elevator wall was dangerous. *Held,* that it was proper to permit the petition to be amended before verdict so as to make it conform to the proof on that point admitted without objection.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Given Campbell* for appellant.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by defendant at the close of the evidence in the case, because the plaintiff wholly failed to establish the case alleged by her amended petition. Plefka v. Knapp-Stout Co., 145 Mo. 321; Blanton v. Dold, 109 Mo. 64; Benedek v. Pettis, 4 Am. Neg. Rep. 487. (2) The court erred in refusing and overruling said demurrer to the evidence because plaintiff, by her own testimony, showed that she was guilty of contributory negligence. Chancy v. Railroad, 176 Mo. 606; Hudson v. Railroad, 101 Mo. 13; Buesching v. Gas Light Co., 73 Mo. 219. (3) The court erred in permitting plaintiff, after the close of the case on both sides, to amend her amended petition, by interlining the words ''and defendant knew, or, by the exercise of a high degree of care, might have known, it was dangerous,'' against the objection of defendant to said amendment, because the amended petition stated no cause of action against defendant. Bracken v. Cross, 163 Mo. 457; Stuart & Jackson v. Van Horn, 91 Mo. App. 168; Ryan v. Hospes, 167 Mo. 364. (4) The court erred in overruling defendant's motion for a new trial, because the verdict of the jury was excessive. Sawyer v. Railroad, 37 Mo. 265; Furnish v. Railroad, 102 Mo. 455; Dimmitt v. Railroad, 40 Mo. App. 658.

*James M. Sutherland* for respondent.

The amendment to the petition at the close of the case was proper—any other practice would lead to injustice rather than justice. There can be no doubt about the trial court's right to amend, and defendant has not very clearly shown that its interests were not legally protected. No affidavit, under section 688 of the code, was offered when the amendment was ordered, ''that the opposite party could not be ready for trial in consequence thereof.''

MARSHALL, J.—This is an action for ten thousand dollars damages for personal injuries sustained by the plaintiff on April 26, 1901, while a passenger on one of the defendant's elevators, in the Holland building in St. Louis.   The plaintiff recovered a judgment for $8,500, and the defendant appealed.

The petition charges that while plaintiff was a passenger on one of defendant's elevators, "her dress caught in a metal arm or obstruction, in the wall of said elevator shaft, forcing her off her feet, which were violently forced against the elevator, and again causing her to be thrown to the floor of said elevator, and she sustained injuries to her head, back, shoulders, and foot was sprained, the bones of the foot broken and dislocated." After describing plaintiff's sufferings and injuries, the petition then proceeds as follows: "And plaintiff further avers that said elevator at said time was in a defective and dangerous condition; that the construction of said elevator was such that the car or cage of said elevator in which plaintiff was being carried as a passenger as aforesaid was defective, in that it had no doors thereto and in passing the several floors of the building passengers were liable to be caught in their clothing or persons upon or against the dangerous metal arms or obstruction on the wall of the elevator shaft opposite the side of the exit from said elevator cage; and that the said wall of the elevator shaft was defective and dangerous, in that there was fastened to said wall between the floors of each story of said building metal arms or obstructions projecting outward from said wall for several inches and so that the outward end of said metal arms or obstructions came close to the edge of the doorless elevator cage as the latter ascended and descended.   And plaintiff further avers, that on the date aforesaid whilst plaintiff was such passenger upon said elevator, by reason of the said defective and dangerous condition and construction of

said elevator and elevator shaft and want of doors on said elevator cage, the plaintiff was, while such passenger, caught by her dress on one of said dangerous metal arms or obstructions in the wall of said elevator shaft and thereby injured in the manner and to the extent hereinbefore particularly stated.''

The answer was a general denial.

The facts are these:

The defendant is the owner of a certain twelve-story office building, on the west side of Seventh street, between Olive and Pine streets in St. Louis, in which it maintains three elevators for the transportation of passengers. The elevators are of the usual construction, except that the cage or car of the elevator has no doors, but the doors are in the elevator enclosure of the elevator shaft on each floor, and that the doors are closed automatically, by a compressed air device, which may be roughly described as follows: About two feet below the level of each floor and opposite the unenclosed exit from the elevator, and fastened to a horizontal bar, there is a metal arm or projection resembling somewhat in shape the letter U with one leg elongated. This arm projects about three quarters of an inch beyond the ''nosing'' or edge of the floor at the entrance of the elevator, and was the same distance from the outer edge of the floor of the elevator. On the top of the elevator cage there is what is called a ''tripper.'' By simply touching a button in the elevator cage the boy can cause the metal arm to engage the tripper, and thereby the door would be closed. The elevator cage is about five and a half feet square. The front of it is entirely open, except about nine and a half inches on the east side where there is a metal grill work. The metal arm above spoken of is opposite the open front of the elevator cage and about eight inches west of the grill work referred to.

The plaintiff was employed in an art studio on the seventh floor of the building. On the day of the accident between two and three o'clock in the afternoon, she

had occasion to visit the ladies' toilet room, which was on the twelfth floor of the building. Returning, she boarded the elevator, where she was the only passenger, and took a position about a foot from the east side of the elevator and about the same distance from the front of the elevator. As the elevator was passing the tenth floor, her dress caught on some obstruction, she was lifted off her feet and carried to the top of the elevator cage and then her dress was torn so that she was released, and she fell to the floor of the cage and was rendered unconscious and seriously injured. She says she does not know what it was that her dress caught on, but that it was some obstruction in the elevator shaft. When she recovered consciousness she was in a doctor's office on the 9th floor of the building. She was carried home in a carriage; was attended by Dr. Phillips, the doctor aforesaid, for about six weeks; then about June 19th Dr. Broome was called in and he attended her until the last of September, when he had her removed to a hospital where he operated on her; she remained at the hospital about four weeks; was then carried home and kept in bed for three weeks; a plaster cast was kept on her foot continuously for seven weeks; Dr. Broome treated her until February 1, 1902, when she employed Dr. Conzelman, who had her removed to a hospital, where he, with Dr. Witherspoon, the chief surgeon of the hospital, operated on her about February 15, 1902; she left the hospital on April 1, 1902. She had lost about twenty-five pounds in weight, her leg had shrivelled, she suffered great pain, and up to the time of the trial, thirteen months after the accident, she had never been able to walk or to bear her weight upon her foot, and was unable to rest it upon the floor longer than a few minutes at a time. The particular injury was a dislocation of the astragalus. To reduce the dislocation the doctors tried soft bandages, plaster of paris casts, and finally they cut the Achilles tendon so as to force the astragalus back into place, and then put the foot in a plaster of paris cast

until the tendon reunited and healed. (This, of course, is not a medico-technical description.) The x-ray discloses a deposit or unnatural substance in the ankle joint, and there is testimony that her injuries are permanent, and that she will never fully recover. Her doctors and hospital bills amount to several hundred dollars.

The plaintiff introduced a mechanical and electrical engineer who examined the elevator and who made a report to the then manager of the building as to the condition of the elevator some time before April, 1901, the exact time not being shown by the abstract of the record. He recommended "that the metal arm aforesaid should be moved over beyond the enclosure of the door, beyond the door, on account of it sticking out there in the hatchway."

The plaintiff also called an inspector of elevators in St. Louis who testified that he examined the elevator before the accident, and that in his judgment the liability of a person's clothing catching on the metal arm spoken of as the elevator passed up or down was very great.

On the other hand the defendant showed that the elevator was put up by a competent firm, was considered one of the best elevators that is made and that the three had carried about seven thousand persons a day ever since they were put in and no one had ever been injured before. The instructions given and refused will be referred to hereinafter.

After the close of the case, the court permitted the plaintiff to amend her petition, by interlineation, by adding after the words "and that the said wall of the elevator shaft was defective and dangerous," the words, "defendant knew or by the exercise of a high degree of care would have known it was dangerous," and this is assigned as error.

I.

The defendant in maintaining and operating an elevator in its building became a common carrier of pas-

sengers, and the plaintiff as an employee of a tenant in the building was a passenger for hire on the elevator.

The rule is thus stated in 10 Am. and Eng. Enc. Law (2 Ed.), p. 945:

"The proprietor or operator of an elevator is a carrier." The same work at p. 946 says: "A carrier by elevator is not an insurer, but is required to exercise the highest degree of care in everything calculated to insure the safety of passengers. There is no distinction in law between the duties and liabilities of a carrier by elevator and one by railroad. Each is bound to use the utmost care and skill in the choice and maintenance of machinery and appliances and the selection of operatives, and the liability of both for the slightest negligence of an operative, irrespective of the care with which he may have been selected, resulting in damage to a passenger is, in its last analysis, identical. The mode of carriage, the appliances available for insuring the safety of the passenger, and the degree and nature of the skill which the servants of each must possess being totally different, the similarity between the duties and liabilities of the two is necessarily confined to those fundamental rules which the law fixes as governing the relation of carrier and passenger.

"The proprietor of an elevator for the use of the tenants of an office building and their visitors is a carrier of passengers for hire. The proprietor's compensation is the rental paid him by the tenant, for which he undertakes to carry him and his visitors by elevator. The same thing is true with reference to the proprietor or operator of an elevator in a hotel or apartment house. The proprietor of an elevator operated in his store for the benefit of customers or prospective customers is a carrier of those who may enter his elevator on his inducement or invitation, implied or express.

"The carrier of passengers is in general under obligations to use the utmost care and diligence in providing and maintaining safe and suitable vehicles and ap-

pliances for the carriage of his patrons and in supplying the vehicles with skillful operatives. The general rule is quite as stringent when applied to the. vertical carriage of passengers by the comparatively novel and perilous means of the elevator.

"Thus where a passenger on an elevator is injured through some defect in the machinery or appliances, of which defect the proprietor knew, or by the exercise of the highest degree of care could have known, he is liable to the passenger for the damages sustained by him through the injury; or where the proprietor failed to avail himself of the use of an appliance known to him to make the operation of the elevator reasonably safe, which would have tended to prevent the injury to the passenger, he is liable therefor.

"As a carrier is not an insurer of the safety of his passengers, some degree of negligence must always be shown to entitle the passenger to recover a judgment for personal injuries."

The rule thus stated has heretofore received the express approval of this division of this court in Becker v. Lincoln Real Est. & Bldg. Co., 174 Mo. 1. c. 250.

Substantially the same doctrine was laid down by GANTT, J., in Division No. 2 of this court in Luckel v. Century Building Co., 177 Mo. 1. c. 637.

There is a distinction in the books between the liability of a common carrier in respect to the carriage of goods and of passengers. As to the former the old rule was that the carrier was liable unless the injury to the goods resulted from the act of God or of the public enemy, while as to the latter, the carrier was liable only in the event he was guilty of some negligence. [5 Am. & Eng. Ency. Law. (2 Ed.), p. 480; Hutchinson on Carriers (2 Ed.), secs. 495, et seq.] But Hutchinson points out, in section 499, that the tendency of the modern decisions is to relax the rigor of the rule as to the carriage of goods and to make the rule as to the carriage of passengers more rigid.

The degree of care which a carrier owes to a passenger has been extensively and exhaustively considered by the courts. The rule is thus stated in Luckel v. Century Bldg. Co., 177 Mo. l. c. 637: "It was its duty to exercise the highest decree of care that prudent persons would exercise in the same or similar circumstances."

Shearman & Redfield on Negligence (5 Ed.), vol. 1, sec. 47, par. 3, in defining the degrees of care, says: "Great care is the care usually bestowed upon the matter in hand by the most competent, conscientious, prudent and careful class of persons engaged in the business to which such matters belong, no matter how few such persons may be, if they are numerous enough to have a recognized existence as a class."

Hutchinson on Carriers (2 Ed.), sec. 501, says: "Although the form of expression is sometimes varied, and the rule is stated as requiring 'the utmost diligence of *very* cautious persons,' 'the greatest possible care and diligence,' 'the most perfect care of a cautious and prudent man,' and other similar phrases, the real meaning intended by them all is that the care and circumspection to be required is the utmost which can be exercised under all the circumstances, short of a warranty of the safety of the passengers; and the rule can not, perhaps, be better or more forcibly expressed than in the words of Christie v. Griggs (2 Camp. 79) that the duty of the carrier is to provide for the safety of his passengers 'as far as human care and foresight will go.' "

In Railroad v. Derby, 14 How. (U. S.) 486, the Supreme Court of the United States said: "When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negli-

gence, in such cases, may well deserve the epithet of 'gross.' ''

The rule is thus stated in 5 Am. & Eng. Ency. Law (2 Ed.), p. 558: ''The definitions and explanations given by the various courts, and sometimes by the same court, of the degree of care to be required of carriers, are many and perplexing—in some cases irreconcilable. Reduced to its simplest form, the rule may be stated to be that the carrier is bound to exercise the strictest vigilance in receiving a passenger, conveying him to his destination, and setting him down safely, that the means of conveyance employed and the circumstances of the case will permit.''

The subject underwent adjudication by this court in Furnish v. Railroad, 102 Mo. 438. There the lower court had given an instruction at the request of the plaintiff which declared the law to be that: the care required of the defendant towards passengers was the ''highest practicable care, caution and diligence which capable and faithful railroad men would exercise under similar circumstances,'' and then defined the meaning of the terms used as follows: ''By the utmost human skill, diligence and foresight is meant such skill, diligence and foresight as is exercised by a *very* cautious person under like circumstances.''

This court expressly approved the instruction and then added: ''Throughout the instructions it is asserted that the duty, owing by a steam railway carrier to its passengers, is to furnish reasonably safe and sufficient roadbed, track, cars, and engine 'so far as human skill, diligence and foresight could provide;' and that defendant 'is responsible for all injuries resulting from slight negligence' on its part. In another part of them the import of the words, 'utmost human skill, diligence and foresight,' as used by the court, is explained to be 'such skill, diligence and foresight as is exercised by a very cautious person, under like circumstances.' This is substantially and almost literally the same lan-

guage as is approved by text-writers of high authority in summarizing the law deducible from all the precedents. [Story's Bailments, sec. 601; 2 Greenleaf's Ev., sec. 221; 2 Kent's Com., 601.]"

Thus is the law written, and the application of these rules to the case at bar renders the solution of all the points and contentions raised very easy and simple.

Upon the case made the defendant is a common carrier and the plaintiff was a passenger for hire. The defendant was not an insurer of the safety of the plaintiff but was its duty "to use such care, prudence and caution to prevent injury to passengers as a very careful and prudent person would use and exercise in a like business and under similar circumstances," as the seventh instruction given for the plaintiff correctly stated the rule. There is no controversy that there was a metal arm or projection which stuck out from the floor about three-quarters of an inch, directly in front of the open side of the elevator cage and which came within three-quarters of an inch of the floor of the elevator. The uncontradicted evidence is that this feature of the elevator had been reported by the expert Jones to the former manager of the building at least three weeks before the accident and the removal thereof recommended, and that such projection was very likely to catch the clothing of the passengers on the elevator, as it passed. Neither is there any question that plaintiff's dress caught on some obstruction or projection in the elevator shaft whereby she was injured. These are facts showing negligence on the part of the defendant in maintaining such appliances, and are, at the least, facts from which the jury were justified in finding a causal connection between the negligence and the injury. There was not the slightest countervailing testimony in the case. The fact that no one had ever been injured by such construction before, was admitted by the court to be considered by the jury in passing upon the question of the defendant's negligence, but such fact did not destroy the evi-

dence of negligence adduced. There was abundant evidence to take the case to the jury, and the instructions taken as a whole, as they must be, are harmonious and properly declare the law. The principal objection urged against them is as to the use of the word "very" in the seventh instruction as descriptive of the character of the careful and prudent person whose actions are to be taken as a gauge of the defendant's conduct, but as herein pointed out the same word similarly employed was expressly approved by this court in Furnish v. Railroad, supra, and is shown by Hutchinson to have been sanctioned in other jurisdictions. The verdict of the jury is supported by substantial evidence, the law was properly declared to the jury, and the only other question in the case is as to the amount of the damages assessed.

The verdict is for $8,500. The injury to the plaintiff is serious and permanent. She has suffered much. She has spent weeks and months in bed, and in the hospital, and has been operated on twice by competent surgeons. Yet for over a year she has been unable to walk or bear her weight on her foot, and the prospects of ever being relieved are very gloomy. She is a young woman and was earning her livelihood to the best of her ability when she was hurt. Under such circumstances her injuries are quite as serious, if not more serious, than those sustained in other cases, where the final recovery allowed to stand was greater than it is here. The injuries in Luckel v. Century Bldg. Co., supra, were nothing like as severe as plaintiff's and were not probably permanent, yet a recovery of five thousand dollars was held not to be excessive.

The injuries in Chitty v. Railroad, 166 Mo. l. c. 443, were not nearly so serious as plaintiff's, yet a recovery of ten thousand dollars was permitted. An examination of the cases collated and digested in the case last cited, will show that while the recovery in this case is large,

Vol 182 mo—39

it is not out of proportion to the amounts recovered in prior cases, nor is it such as to show on its face that the jury were guilty of partiality, prejudice or misconduct, nor such as to shock the judicial sense of right.

The defendant assigns as error the ruling of the court, allowing the plaintiff to amend by alleging in her petition that the defendant knew or by the exercise of ordinary care could have known that the appliance was dangerous.

This amendment was in conformity to the proof to that effect, which was admitted without objection, and it was therefore in furtherance of justice, and therefore was properly allowed under section 657, Revised Statutes 1899. [Feurt v. Caster, 174 Mo. l. c. 298.] The defendant did not attempt to meet this proof, nor ask to have the case continued so as to have an opportunity to meet it, nor did it file an affidavit of surprise. The evidence was already in the case without objection, and the amendment simply made the pleading conform to the facts proven.

There is no merit in the contention that the court erred in refusing defendant's fourth instruction that the jury should discard from their consideration the fact that the elevator cage had no doors, for it is plain that if the cage had been provided with a door, the plaintiff's dress would not have caught on the metal arm or projection, and therefore it was the combination of the metal arm and the open side of the elevator cage that produced the injury. Hence the defendant's instruction that treated the want of a door separately from the projection, was properly refused.

The conclusion is irresistible that the verdict is for the right party, there is no error in the record, and the damages are not excessive. The judgment is therefore affirmed.

All concur.