STATE OF MISSOURI at the relation of KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, FRANCIS H. TRIMBLE and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—105 S. W. (2d) 915.

Court en Banc, June 5, 1937.*

*Note: Opinion filed at September Term, 1936, April 21, 1937; motion for rehearing filed; motion overruled at May Term, June 5, 1937.

1196

*Cyrus Crane, J. F. Walsh, W. H. Woodson* and *D. C. Chastain* for relator.

1198

*Cowgill & Popham* and *John F. Cook* for respondents.

ELLISON, J.—Certiorari to quash the record of the Kansas City Court of Appeals made in the case of Linvill Adams, plaintiff v. Kansas City Southern Railway Company, a corporation, defendant, lately pending in that court on appeal. [83 S. W. (2d) 913.]

The plaintiff recovered a verdict which the trial court set aside and granted a new trial on the ground that defendant's demurrer should have been sustained at the close of all the evidence. On plaintiff's appeal the Kansas City Court of Appeals reversed the order made below and remanded the cause with directions to the trial court to reinstate the verdict and enter judgment thereon. We give the facts substantially as they are stated in the opinion of the Court of Appeals, omitting quotation marks.

Plaintiff sued for personal injuries sustained by him and for loss arising from the destruction of his automobile, both caused by the automobile's crashing into a freight car negligently allowed by defendant to stand unguarded and with no warning lights for an unlawful length of time, on defendant's crossing over and upon State Highway No. 52 in the town of Amoret, a town having less than 10.000 inhabitants.

The injury occurred sometime between 11:00 o'clock P. M. and midnight of November 17, 1932, as plaintiff was traveling eastwardly in his automobile on said highway. The railway ran north and south across said highway at or near the western edge of the town, where the same is greatly used by the general public day and night; said highway being paved with gravel, and being the main road through the town, which had a population of something slightly over three hundred. The highway is downgrade as it approaches the crossing from the west; and on the night of the accident, that part of the road immediately next to and west of the crossing, consisting of loose gravel, was mixed with fine snow which had fallen during the day.

As plaintiff, a young man about twenty-two years of age, was approaching the crossing on his way home after calling on a young lady, the wind was blowing and the whirling snow and dust rendered the obstructing freight car difficult to be seen and the atmosphere was of a grayish color. The lights of plaintiff's car, which were of the standard make and height from the ground, were shining, and illuminated the roadway about one hundred yards ahead under normal conditions; but under the conditions stated, and because of the height at which the lights are placed on the car, the angle at which they are pointed, and the slope of the ground over which the automobile was approaching the crossing, only objects close to the ground were clearly

illuminated at a distance of fifteen or twenty feet ahead of the automobile. The freight car was sitting across the roadway, with the wheels of its front end on one side of the graveled road and those of its other end on the other, the freight car thus "straddling" the traveled portion of the highway, so to speak. Thus the portion of the stationary freight car, immediately over the traveled part of the highway, was somewhat, perhaps three feet, above the ground.

As plaintiff approached the crossing and was about one hundred feet west of it, he slowed down to about fifteen miles per hour. He knew the railroad crossing was there, but no stationary freight car or train was revealed or could be seen. He looked both to the right and left to see if any train was aproaching from either side, and seeing none, he continued to approach the crossing slowing down, as he approached, to about seven or eight miles per hour until he was about ten or twelve feet from the crossing. He still saw no freight car on the crossing and no train was approaching and his automobile was "almost still." He then "stepped on the accelerator to go across the track. When I got within a distance of five or six feet, I saw the outline of something, and I slammed on the brakes as soon as I could."

"Q. What happened then? A. I crashed into the train (meaning, of course, the freight car; the evidence shows that the hood and engine of the automobile was forced under the freight car as far as to the cab). Q. At the time you slowed down, as you described, and then put your gas on, did you know there was any (freight) car standing on that track? A. No, sir. Q. I want you to tell the jury which way you were looking as you came on up to that (freight) car? A. I was looking straight ahead."

By the impact the front of the automobile to about halfway of the length of the engine was wedged under the freight car. The plaintiff was seriously injured and the automobile considerably damaged.

There was evidence that this northbound freight train which blocked the crossing had been standing motionless on that track waiting for the southbound passenger train. There was ample evidence to show that the freight car was left standing much longer than that permitted by Section 4830, Revised Statutes 1929 (Mo. Stat. Ann., p. 2200). It was thus left in the nighttime, unguarded and with no warning lights and motionless. While the sky was clear overhead, the night was not a bright one—"kind of a dark night," and a dim city light about fifty or more feet east of and on the other side of the railroad crossing could not be depended upon to light up the place where the danger was; all of which circumstances were fully known to the train operators.

The relator contends the Court of Appeals' opinion contravenes controlling decisions of this court in two main particulars: (a) in

approving plaintiff's Instruction No. 2; (b) in holding that the evidence introduced was sufficient to support the verdict for plaintiff. It will be necessary for us to discuss only the latter assignment, for we think it is good; and since it disposes of the whole case, the procedural questions automatically drop out.

It is well settled that this court will not quash an opinion of a Court of Appeals upon certiorari unless that opinion declares some general principle of law contrary to a controlling announcement of this court upon the same principle, or, on a given state of facts makes some ruling contrary to a controlling decision of this court on equivalent or similar facts. [State ex rel. Met. Life Ins. Co. v. Shain, 334 Mo. 385 391, 66 S. W. (2d) 871, 873; State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 343, 85 S. W. (2d) 420, 421.]

The facts in the two cases need not be identical. They are sufficiently "similar" if both sets of facts as a matter of law require the application of the same rule. This is necessarily true because the object of Section 3, Article VI, Constitution of Missouri giving this court a superintending control over the Courts of Appeals by certiorari, is to preserve harmony in judicial decisions. [State ex rel. Arel v. Farrington, 272 Mo. 157, 163-4, 197 S. W. 912, 913; State ex rel. Business Men's Assurance Co. v. Allen, 302 Mo. 525, 534, 259 S. W. 77, 78; State ex rel. Gordon v. Trimble, 318 Mo. 341, 348, 300 S. W. 475, 478; State ex rel. Union Pac. Railroad Co. v. Bland, 324 Mo. 601, 612, 23 S. W. (2d) 1029, 1033; State ex rel. Arndt v. Cox, 327 Mo. 790, 797, 38 S. W. (2d) 1079, 1081.]

And for the same reason it is further true that when this court acquires jurisdiction over a cause by certiorari, we may consider conflicts not suggested by the relator and may on our own motion point out conflicts. [State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 101, 253 S. W. 1014, 1016; State ex rel. Mo. Gas & Elec. Service Co. v. Trimble, 307 Mo. 536, 552, 271 S. W. 43, 47; State ex rel. John Hancock Mut. Life Ins. Co. v. Allen, 313 Mo. 384, 405, 282 S. W. 46, 52; State ex rel. Gatewood v. Trimble, 333 Mo. 207, 213, 62 S. W. (2d) 756, 758.]

Now it is a fundamental doctrine of the negligence law of this State that as against primary negligence of the defendant, the contributory negligence of the plaintiff is a complete defense. [Worth v. St. L.-S. F. Ry. Co., 334 Mo. 1025, 1030, 69 S. W. (2d) 672, 674; State ex rel. Wells v. Haid, 324 Mo. 759, 762, 25 S. W. (2d) 92, 93.]

The law is further well settled that "a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law." [Demsey v. Horton, 337 Mo. 379, 387, 84 S. W. (2d) 621, 626; Stotler v. C. & A. Ry. Co., 204 Mo. 619, 638, 103 S. W. 1, 7; Schmidt v. Mo. Pac. Ry. Co., 191 Mo. 215, 234, 90 S. W. 136, 140;

Huggart v. Mo. Pac. Ry. Co., 134 Mo. 673, 680, 36 S. W. 220, 221; Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362, 374, 30 S. W. 339, 342-3.] And if, when approaching a railroad track, the plaintiff is unable to see whether he can pass across in safety, he must exercise care commensurate with the circumstances, and should, if necessary, continue to look until he can see, even up to the crossing. [Monroe v. C. & A. Railroad Co., 297 Mo. 633, 646, 249 S. W. 644, 647; State ex rel. Hines v. Bland (Mo. banc), 237 S. W. 1018, 1019; Evans v. Ill. Cent. Railroad Co., 289 Mo. 493, 501, 233 S. W. 397, 399; Hale v. St. J. Ry. Co., 287 Mo. 499, 518, 230 S. W. 113, 119; Tannehill v. K. C., C. & S. Ry. Co., 279 Mo. 158, 170, 213 S. W. 818, 821; Kelsay v. Mo. Pac. Ry. Co., 129 Mo. l. c. 374, 30 S. W. l. c. 342-3.]

■ Likewise it has long been the rule in this State that where testimony is, beyond reasonable doubt, contrary to physical laws and facts of common knowledge, it cannot be accepted as substantial evidence. [Dunn v. Alton Railroad Co. (Mo. Div. 1), 340 Mo. 1037, 104 S. W. (2d) 311; Demsey v. Horton, 337 Mo. l. c. 384, 84 S. W. (2d) l. c. 624; Hardin v. Ill. Cent. Railroad Co., 334 Mo. 1169, 1179, 70 S. W. (2d) 1055; Gurley v. Mo. Pac. Ry. Co., 104 Mo. 211, 233, 16 S. W. 11, 17.]

■ In the instant case if it be true as a matter of law under the foregoing well-established doctrines: (1) that the plaintiff, Adams in the exercise of the highest degree of care (Sec. 7775, R. S. 1929, Mo. Stat. Ann., p. 5197) could have seen the freight car standing across the highway, when his automobile was "almost still" ten or twelve feet away with its lights pointed in the direction of the car; (2) or that he could have seen the freight car thereafter in time to have averted the collision by the exercise of like care; (3) or, that he failed to exercise the highest degree of care in proceeding toward the railroad track from his position ten or twelve feet away, if he could not see ahead—if any of these enumerated facts be true as a matter of law, we say, then the plaintiff was guilty of contributory negligence.

Nevertheless, the Court of Appeals held on the foregoing facts recited in its opinion that the plaintiff made a case for the jury, which, in legal effect means that the court concluded he was not guilty of contributory negligence as a matter of law, or, in other words, that there was substantial evidence tending to clear him of the charge of contributory negligence notwithstanding his admitted proximity to the freight car with the lights of his automobile trained thereon. This exculpatory evidence is stated in the opinion to be the testimony of the plaintiff that the wind was blowing, causing swirls of snow and dust which rendered the freight car difficult to see and made the atmosphere a grayish color; and also the facts that the highway approaching the railroad crossing was downgrade, which, with the

height and angle of the automobile lights, caused only such objects as were close to the ground and within a distance of fifteen or twenty feet to be clearly illuminated.

A number of decisions of this court are cited in relator's brief which hold that one who approaches a railroad track and by looking can see an oncoming train is guilty of contributory negligence as a matter of law if he goes upon the track and is struck. Among these are State ex rel. Hines v. Bland, 237 S. W. l. c. 1019; Evans v. Ill. Cent. Railroad Co., 289 Mo. l. c. 501, 233 S. W. l. c. 399; and Kelsay v. Mo. Pac. Ry. Co., 129 Mo. l. c. 374, 30 S. W. l. c. 342-3. In respondent's brief these cases are distinguished on the ground that they deal with situations where the train was *moving* and the casualty occurred in *daylight*, whereas, in the instant case the freight car was motionless and astraddle the highway in the murky night. But respondents in effect concede said decisions are in point on principle as far as they go, and would be controlling here if the evidence showed as a matter of law that the plaintiff could have seen the freight car by the aid of his automobile headlights. For respondents' opinion and brief stress the facts that the slope of the road and the height and angle of the headlights made the freight car difficult to see at night through the windblown snow and dust.

And, of course, it is obviously true that the basic question underlying the foregoing line of cases is, *could the injured party have seen the train if he had looked?* It makes no difference whether the train was moving or still, or whether he might have seen it by daylight or lamplight. So the case here boils down to the question whether there is substantial evidence excusing his failure to see because of the topographical, mechanical, nocturnal and atmospheric conditions specified in the Court of Appeals opinion. If his testimony that he could not see freight car on account of these conditions is contrary to physical laws and facts of universal knowledge, then there is no substantial evidence that he could not see, and the opinion contravenes the Kelsay case and other like subsequent decisions, for, in that situation the facts in those decisions and the facts in the instant case would call for the application of the same rule of law, and would be "similar" for the purposes of this certiorari proceeding.

But this raises still another question. Since the opinion of the Court of Appeals ruled the plaintiff was not guilty of contributory negligence as a matter of law, we must assume the respondent judges held the testimony of the plaintiff, that he was unable to see the freight car because of the above conditions, was *not* clearly contrary to physical laws and facts of universal knowledge. [State ex rel. Gordon v. Trimble, 318 Mo. l. c. 348, 300 S. W. l. c. 478.] Is this court bound by that ruling? We think not. While we must look to the

opinions of the Courts of Appeals for the facts of cases, and are bound by their rulings therein on questions of law, whether right or wrong, unless such rulings conflict with prior controlling decisions of this court: State ex rel. Superior Minerals Co. v. Hostetter, 337 Mo. 718, 721, 723, 85 S. W. (2d) 743, 744, 745; still such conflicts do not vanish merely because the opinions declare the facts they have set out are not similar to those in our decisions (if they are), or that evidence is not contrary to physical laws and facts of universal knowledge (if it is). Were the rule otherwise we would be completely disarmed and unable to preserve harmony in our judicial decisions.

We think the plaintiff's testimony that he could not see the freight car in time to stop is plainly contrary to physical laws and common knowledge, in view of the facts stated in the respondents' opinion. Let us glance over the facts again. The highway over which the plaintiff was traveling was paved with gravel, and was the main road through the village of Amoret. The lights of his automobile were of standard make and height from the ground, were burning, and would illuminate the roadway for about 300 feet ahead under normal conditions. While the night was not a bright one—"kind of a dark night"—the sky was clear overhead, though some snow had fallen during the day. The plaintiff was familiar with the railway crossing, and evidently could see his way along the road and knew where he was, since he "slowed down" to about fifteen miles an hour when he got about 100 feet west of the railway crossing. Thence he continued to approach the crossing, reducing his speed to about seven or eight miles per hour. He looked to the right and to the left, but could see no train coming from either direction and none standing on the railroad track ahead of him. Being satisfied he continued on.

When he got about ten or twelve feet from the crossing his automobile was almost still. He was looking straight ahead and still was unable to see the freight car. So he "stepped on the accelerator to go across the track." When he had gone five or six feet—which was half of the ten or twelve feet between the point where he almost stopped and the freight car, and left only five or six feet between him and the freight car—he saw "the outline of something." Then he "slammed on the brakes," as soon as he could, but crashed into the freight car with such violence that the hood and engine of his automobile were forced thereunder as far as the cab; or as he said in another place the automobile slid under the freight car for about half the length of the automobile engine.

Now it is incredible that the plaintiff's automobile could have been standing, or "almost still," within ten or twelve feet (twice the height of a man, or four or five paces) from a freight car with his lights trained thereon—lights which would illuminate the roadway 300 feet ahead under normal conditions—and yet not see the car.

It is still more incredible that he would have started up again and have got within five or six feet of the freight car—two yards or less—before he saw even an "outline of something." And, if possible, it is even yet more incredible that from an almost standing start he could have gone only five or six feet and have acquired such speed and momentum that he was unable to stop his car within a like distance by a vigorous application of the brakes, but crashed under the freight car for half the length of the automobile engine.

And as to the evidence that he could not see. The most important fact urged in this connection is that as he approached the railway crossing the wind was blowing, and the whirling snow and dust rendered the freight car difficult to see and the atmosphere was of a grayish color. But it was not snowing at the time. Plaintiff had been able to see well enough before he got up close to the track. As he drew near it he looked to the right and left and satisfied himself that no train was approaching from either direction. There is nothing in the Court of Appeals opinion to indicate there was any blinding swirl of snow and dust arising suddenly and only at the highway crossing. If there was it is unbelievable that he would not have waited for it to subside.

Concerning the slope of the road and the height of the lamps on the plaintiff's car. The fact that the highway was downgrade toward the railroad crossing would, of course, make the lights pitch somewhat downward. But there is no indication or hint in the Court of Appeals opinion that there was any violent declivity or anything extraordinary about the crossing; and as a matter of common knowledge it is incredible that any ordinary variation of the highway from the horizontal would have so changed the direction of lights that they would not shine on a freight car twelve feet or less away. The fog or grayish color of the atmosphere would tend to diffuse the light, like a frosted globe. It is beyond belief that the space close to the ground could have been clearly illumined for a distance of fifteen or twenty feet, but that the lower part of a freight car, three feet above the ground and from six to twelve feet away would have been left in impenetrable gloom. The lights of the automobile were of standard height, which would have put them also about three feet above the ground. Of this we can take judicial notice.

██ But if we are wrong in holding as a matter of law that plaintiff could have seen the freight car in time to have stopped, let us take the plaintiff at his own word, that he could not see the car when he was within ten or twelve feet of the railroad track because of the swirling snow and dust. In that situation he was clearly guilty of contributory negligence as a matter of law in dashing forward as he did, when he could not see, with such force and violence that he crashed into the freight car for half the length of the engine even

after he had been strenuously applying the brakes for a distance of five or six feet, or as much of it as the automobile had not traversed before the brakes took hold. It was his duty to exercise care commensurate with the circumstances, and if necessary to continue to look until he could see ahead, even up to the crossing. This was decided in Kelsay v. Mo. Pac. Ry Co., 129 Mo. 1. c. 374, 30 S. W. 1. c. 342-3, and the other cases following it, which are cited earlier in this opinion.

In either view the record of the Court of Appeals should be quashed, and it is so ordered.

*Douglas, J.*, not voting because not a member of the court when cause was submitted; *Frank* and *Hays, JJ.*, concur in result; *Gantt, Leedy* and *Tipton, JJ.*, concur.