STATE OF MISSOURI at the relation of JAMES M. KURN and JOHN G. LONSDALE, Trustees of St. Louis-San Francisco Railway Company, a Corporation, Relators, v. WILLIAM C. HUGHES, WILLIAM J. McCULLEN and LYON ANDERSON, Judges of the St. Louis Court of Appeals.—153 S. W. (2d) 46.

Division One, July 2, 1941.

178

*M. G. Roberts, A. P. Stewart* and *C. H. Skinker, Jr.*, for relators.

*William R. Schneider* for respondents.

DALTON, C.—This is an original proceeding in certiorari to review for alleged conflict the opinion of respondents in the case of Mason v. Kurn et al. (Mo. App.), 145 S. W. (2d) 465. The plaintiff recovered a judgment for $2500 actual damages and $1500 punitive damages on account of injuries sustained when a truck owned and driven by him was struck by defendants' train at a public crossing in Franklin County. Defendants appealed. The sole issue presented by the appeal was whether the evidence was sufficient to warrant an award of punitive damages and, therefore, whether the giving of instructions authorizing the jury to award punitive damages was

proper. Respondents held the evidence to be sufficient and affirmed the judgment.

Respondents stated the facts as follows: "The collision whereby plaintiff sustained the injuries for which he sues occurred on February 22, 1938, between two and three o'clock in the afternoon. It was a damp, rainy day.

"In going from Robertsville to the crossing plaintiff traveled along a county road which ran in an easterly and westerly direction, paralleling the railroad track. He was operating his truck in a westerly direction until he reached a point about twenty-five feet from the crossing, where the road made a sharp turn to the left, or south, and crossed the railroad track. About six or seven hundred feet east of the point where the county road turns to go up over the crossing the road passes over a high hill or bluff, and at this location the railroad track, which parallels the county road on the south, passes through a deep cut. Proceeding in a westerly direction from the crest of this hill toward the point where the county road turns sharply to the left, or south, to go over the crossing, the road descends sharply to a point ten feet lower than the railroad track, and continues at that relative level below the track to the point where the road turns south to go up over the crossing. Adjacent to this low stretch of roadway and between it and the railroad track there was at the time of the accident an embankment. The top of this embankment was ten feet above the level of the track, and the roadway parallel with the track was ten feet below the level of the track, so that the top of the embankment was twenty feet above the level of the roadway. There was a steep incline from this level of the roadway to the crossing. This embankment was such as to obstruct a train, approaching the crossing from the east, from the motorist's line of vision as he approached the crossing from the north, and he would have to look almost completely backward to see the train approaching, and then could not see it until starting up the steep incline to the crossing, and could see it only a distance of 150 feet from the crossing.

"Plaintiff testified that when he reached a point twenty or twenty-five feet north of the crossing, he stopped and put his truck in double low; that he looked to the east and could see no train approaching; that he heard no bell or whistle; that he then proceeded toward the crossing; that when the front wheels of the truck were at the first rail of the track, or possibly barely over the first rail, he saw the approaching train for the first time; that it was right on him and traveling at a very high rate of speed, possibly fifty or sixty miles an hour; that he threw open the left door of the truck and started to jump when the collision occurred, and that that was the last thing he remembered until two men lifted him up and had him standing on his feet, holding onto him to steady him.

"The testimony shows that this was an unusually dangerous crossing; that the view to the east of a traveler approaching the crossing from the north was badly obstructed by the embankment between the railroad track and the county road and also by the cut through which the railroad passed some six or seven hundred feet east of the crossing and the southward curve in the track east of the crossing; and that there had been a number of accidents and near accidents at this crossing prior to the accident in question here."

Respondents further stated that defendants had been notified by a petition of local citizens that the crossing was a most dangerous one; that a request had been made for a re-location of the crossing; and that after plaintiff was injured, the embankment between the railroad track and the county road was graded down.

From the above facts the respondents found that "the evidence shows that the crossing was an unusually dangerous crossing. No steps were taken to remedy its dangerous condition until four months after ▆▆▆ the plaintiff was injured. No precautions were taken to protect the traveling public against the danger. Defendants knew of the dangerous condition of the crossing, and knew that their failure to remedy its dangerous condition, or to take any precautions to protect the traveling public against the danger, would naturally and probably result in injury to persons traveling over the crossing. Their failure in this regard was willful. It could not have been the result of mere inadvertence. It was clearly the result of a reckless indifference to the rights of those whose lives and limbs were thereby imperiled."

The instructions "authorizing the jury to award punitive damages" are referred to in the opinion. Instruction No. 4 advised the jury "that an act or omission which, though properly characterized as negligent, may manifest such reckless indifference to the rights, physical welfare or safety of others that the law will imply that the injury resulting from such act or omission, if any, was intentionally inflicted, and the term 'malice' or 'malicious' as here used means that the act is willful or intentional or done with a reckless indifference to the rights, safety or welfare of others, and . . . if, under the evidence and the other instructions . . . you find in favor of plaintiff . . . and . . ., if you find from the evidence that the defendant railroad company knew that its said railroad crossing . . . was so maintained as to be dangerous to motorists using said highway while exercising the highest degree of care for their own safety, and that the defendants, by the exercise of ordinary care could have made the said crossing reasonably safe for such motorists, . . . by installing at said crossing, automatic electric bell signal, or danger lights, or remove an embankment east of the crossing and north of the tracks on defendants' right of way, and thus and thereby have made the crossing reasonably safe and . . . they failed to

do so, though they had ample time to do so, if you so find, before plaintiff was injured, and if . . . the defendants knew, or by the exercise of ordinary care could have known of the likely consequences to the plaintiff and other motorists of their failure to do so, and if you further find . . . that said failure, . . . manifested, if it did, a willful or reckless indifference to the rights, safety or physical welfare of the plaintiff, . . . then the jury may allow such further damages, known in law as exemplary or punitive damages, as will be a punishment to the defendant railroad company, and those in charge of it, and a wholesome warning to others, . . ."

Instruction 5 advised the jury "that if under the next previous instruction . . . you should find that the defendants' acts or omissions, if any, relative to the maintenance of the crossing described in the evidence manifested, if they did, a malicious, willful, intentional or reckless indifference to the rights, safety or physical welfare of the plaintiff, Mason, relative to the injuries, if any, sustained by him . . . then and in such event the contributory negligence, if any, of the plaintiff, Mason, at the said time and place would be no defense to this case, even though the other instructions given you require you to find that the plaintiff, Mason, was at the said time and place in the exercise of the highest degree of care before he is entitled to a verdict in his favor in this action."

On certiorari we review an opinion to determine whether such opinion conflicts with the decisions of this court and "this court will not quash an opinion of a Court of Appeals upon certiorari unless that opinion declares some general principle of law contrary to a controlling announcement of this court upon the same principle, or, on a given state of facts makes some ruling contrary to a controlling decision of this court on equivalent or similar facts. . . . The facts in the two cases need not be identical. They are sufficiently 'similar' if both sets of facts as a matter of law require the application of the same rule." [State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 1201, 105 S. W. (2d) 915, 918; State ex rel. M. K. & T. Ry. Co. v. Shain, 343 Mo. 961, 124 S. W. (2d) 1141, 1142.] With these rules in mind, we review respondents' opinion.

Respondents referred to three cases decided by this court as follows: Reel v. Consolidated Investment Co. (Mo.), 236 S. W. 43, 46; Evans v. Illinois Central Railroad Co. (in Banc), 289 Mo. 493, 233 S. W. 397; Kennedy v. North Missouri Railroad Co., 36 Mo. 351. Respondents held that the Reel case, supra, was "in principle on all fours with the case at ▮ bar," quoted therefrom, and affirmed the judgment on the basis of said opinion. Respondents held that the Evans and Kennedy cases, supra, were "clearly distinguishable on their facts from the case at bar."

In the case of Reel v. Consolidated Investment Company, supra, relied on by respondents, the plaintiff was being carried as a passenger

on an elevator owned and operated by defendant, the elevator fell, and plaintiff was thereby injured. The petition alleged that the fall of the elevator and plaintiff's injuries were due to defendant's negligence, and further alleged that defendant's conduct, in view of facts stated, was "reckless and wanton." Plaintiff prayed for actual and punitive damages.

Plaintiff's evidence tended to show that the fall of the elevator was caused by the breaking of two wire cables used to raise and lower the elevator. Each cable was a half inch in diameter, and was made up of six strands of nineteen wires each. Some four months before the elevator fell it was inspected by an alleged elevator inspector of the City of St. Louis, who found six or seven wires broken in one of the strands of the cable. This condition reduced the strength of the cable 20 per cent. The inspector pointed out the broken wires to defendant's engineer, and subsequently defendant was notified to replace the hoisting cables immediately in order to place the elevator in a safe condition. The cable was not renewed and some three months later the cable was again inspected in the presence of defendant's engineer and strained and broken wires were found in all strands of both cables, with the strands "opened up." The engineer was told to put in new cables and promised to do so. Defendant's manager was also notified that the elevator was dangerous. The manager referred the notice to the building superintendent, and he turned it over to the engineer, with directions to give it attention. Nothing was done, and the cables remained in use until the elevator fell. The cause was submitted to the jury under the *res ipsa loquitur* doctrine, and a verdict returned for plaintiff. The sufficiency of the petition and evidence to authorize an award of punitive damages was raised on appeal, and this court ruled as follows (236 S. W. 43, 46):

"Whether defendant is liable for exemplary damages in this case is to be determined from the conduct of Reed, its engineer. His acts or omissions, with respect to the maintenance and operation of the elevator, were those of the defendant. [Haehl v. Railroad, 119 Mo. 325, 24 S. W. 737.]

"One permissible view of the evidence is that at the time of the inspection on March 4th and subsequently the cables of the elevator were so worn and broken that they were likely to give way at any instant while in use; that Reed (the engineer) not only knew the physical condition of the cables, but he also knew and appreciated the imminent danger necessarily incident to their further use; and that his failure to renew them during a period of six weeks was not, and under the circumstances could not have been, the result of mere inadvertence, but of an utter indifference to the rights of those whose lives and limbs were thereby daily and hourly imperiled, equivalent to intentional wrongdoing. Both the pleading and the evidence were sufficient to authorize an award of exemplary damages."

In connection with our ruling in the above case, it must be remembered that we have held that "a carrier of passengers by an elevator has the same liability and duty of care for their safety as a carrier by railroad or a carrier of any other kind." [Jenkins v. Mo. State Life Ins. Co., 334 Mo. 941, 948, 69 S. W. (2d) 666, 670.] A carrier by elevator is not an insurer, but is required to exercise the highest degree of care. [Goldsmith v. Holland Bldg. Co., 182 Mo. 597, 604, 81 S. W. 1112.] In the operation of such an elevator the owner and operator is required to exercise "the utmost care and skill which prudent men would use and exercise in a like business and under similar circumstances." [McCardle .v. George B. Peck Dry Goods Co., 271 Mo. 111, 122, 195 S. W. 1034.] In maintaining such an elevator the owner is required to use the highest degree of practicable care which prudent men would observe in like circumstances, and he is bound to use the utmost care in the choice and maintenance of machinery and appliances. [Lee v. Publishers Knapp & Co., 155 Mo. 610, 642, 56 S. W. 458.] In addition, since the cause in the Reel case was submitted under the *res ipsa loquitur* doctrine, we must infer that there was no issue or evidence that ▇▇▇ plaintiff's injuries were caused by contributory negligence, because, "to make out a case for the application of this doctrine, the facts relied on ought to be such as reasonably to exclude all defensive inferences attributable by operation of law to the negligence of the plaintiff." [Removick v. Bambrick Bros. Const. Co., 264 Mo. 43, 173 S. W. 686, 687; Deister v. Railroad, 271 Mo. 63, 195 S. W. 499, 501; McGarth v. Railroad, 197 Mo. 97, 104, 94 S. W. 872.] We think it .is apparent that the facts in the Reel case, and the law governing the relationship of the parties, were very different from the case here.

In the case of Evans v. Illinois Central Railroad Co., supra, plaintiff's husband, hereinafter referred to as deceased, died as the result of injuries received in a collision between the automobile he was driving and one of defendant's trains at a crossing on a much-used public street in the City of St. Louis. The train approached the crossing from the south at 40 or 45 miles per hour and no bell was rung or whistle blown to give warning of its approach. The train could have been seen for a distance of several hundred feet south of the crossing from a point 15 feet east of the tracks. The train struck the automobile as it moved in a westerly direction over the crossing.

The petition in that case charged that the deceased's injuries and death were caused by "defendants' willful, wanton, reckless, and conscious disregard of the life and bodily safety of deceased" in running its train at a speed of 40 to 45 miles per hour over a known to be dangerous and much-used public crossing, without giving warning of the ·approach of the train. A plea that deceased was guilty of contributory negligence in failing to look or listen, and in driving

on the crossing in front of the train, was stricken out of defendants' answer on the ground that it constituted no defense.

This court reviewed the evidence in the case and held there was evidence that deceased was guilty of contributory negligence which would have barred a recovery on a charge based on negligence, and then said (233 S. W. 397, 399): "The act cannot be both negligent and intentional at the same time. Such allegations are inconsistent. [Raming v. St. Ry. Co., 157 Mo. 477, l. c. 508, 57 S. W. 268; O'Brien v. Transit Co., 212 Mo. 59, 110 S. W. 705, 15 Ann. Cas. 86.] . . . Willfulness implies intentional wrongdoing. A wanton act is a wrongful act done on purpose, or in malicious disregard of the rights of others. Recklessness is an indifference to the rights of others and an indifference to whether wrong or injury is done or not. As we understand the words 'conscious disregard of the life and bodily safety,' they add nothing to the words 'willful, wanton, and reckless,' and are included within the meaning of those words. As applied to an act, they necessarily mean that such act was intentionally done without regard to the rights of others, and in full realization of the probable results thereof.

"Negligence of the injured person is no defense when such injury is intentionally inflicted. [Raming v. St. Ry. Co., 157 Mo. l. c. 507, 57 S. W. 268, citing and quoting approvingly from 1 Shear. & Redf. on Neg. (5 Ed.), sec. 64.]

"All that is shown here is that the train was moving at a high rate of speed, and without warning, toward and over a busy public street. It is not shown that people were on the crossing in a position of peril as the train approached, or that the engineer or fireman saw deceased at all. . . . The railroad track was in itself a warning of danger to the public, and the engineer had the right to assume that persons approaching such track would use due care. In other words, although negligent, such engineer is not shown to have been acting in such conscious disregard of the rights of deceased as to amount to willful or intentional wrongdoing. . . .

"Respondent has failed to show that appellant willfully, wantonly, and recklessly caused the death of her husband. The only inference the jury was entitled to draw from the evidence was negligence on the part of appellant. An act cannot be held to be willful, wanton, and reckless by only showing a failure to exercise the degree of care due under the particular circumstances. Nothing more is shown here. . . .

"Before a case can be submitted to a jury on the theory that the act complained of was willful, wanton, and reckless, something more than acts heretofore regarded as constituting mere negligence must be shown. To rule that intentional injury may be inferred from such facts as are before us in this case would overwhelm our courts with a flood of perjured testimony as the procuring of a witness to

swear that any train was moving at high speed, without warning, when the accident occurred at a railway crossing in a densely settled city, would present no practical difficulty to unscrupulous litigants or counsel of like character. If willful, wanton, and reckless conduct may be inferred from the proof of such facts, a further difficulty presents itself. What speed would justify the trial court in submitting such question to the jury? A speed that would appear to one trial judge to be willful, wanton, and reckless, signifying intentional wrongdoing, might appear to another judge as being evidence of nothing more than mere negligence. No two judges would agree when and under what circumstances failure to give warning would authorize the submission of such question. Such a rule would undoubtedly result in chaos in the law governing crossing cases, and in such cases effectually destroy the salutary rule that one whose own negligence contributes to his injury cannot recover for the negligence of another, also contributing to such injury. The rule we have here announced will not prevent the showing in any case of acts which themselves indicate an intentional or wanton infliction of injury, or affect the rule that contributory negligence constitutes no defense to intentional infliction of injury.''

■ In determining whether the facts considered by respondents were such that any other inference than negligence could be drawn, it is proper to consider the law of this State with reference to railroad crossings. The matter of altering, separating grades, or abolishing grade crossings, heretofore or hereafter established, is within the jurisdiction of the Public Service Commission of Missouri. [Sec. 5627, R. S. 1939, Mo. Stat. Ann., p. 6585, sec. 5171; State ex rel. M. K. & T. Ry. Co. v. Public Service Commission, 271 Mo. 270, 197 S. W. 56, 59.] Other statutes regulate the construction and maintenance of crossings and fix the minimum requirements as to notice and warning by approaching trains. [Sec. 5214, R. S. 1939, Mo. Stat. Ann., p. 2140, sec. 4757; Sec. 5213, R. S. 1939, Mo. Stat. Ann.; p. 2133, sec. 4756.]

■ The rule with reference to the respective rights and duties of a railroad company and a traveler at a railroad crossing is well stated in Jackson v. Southwest Mo. Railroad Co. (Mo.), 189 S. W. 381, 383, as follows: ''The use of the highway at these crossings by the railway and the general public is a common one, to be enjoyed by each consistently with the rights of the other. While the railroad has generally the priority of right of way, that priority depends, not on a superior right, but solely upon the principle of equality as applied to the nature of the public service it performs and the character of the machinery and appliances necessary to its prosecution. To secure this equality by preventing so far as possible the annoyance and delay of the general public which would result from casting upon them the whole burden of protecting themselves from injury in the legitimate use of the easement, the Legislature has seen fit to define the minimum

of warning to be given by the railroad of the approach of its deadly instruments of traffic. . . . It is true that the law requires the traveler to anticipate that the company may fail to give the statutory signals, and to act upon that theory; just as it requires the railroad company to anticipate that the traveler will fail to hear or disregard the signal when given, and to keep reasonable watch for such instances, and be prepared to protect those guilty of such carelessness. These duties are equal and reciprocal, and extend no further than does the humane principle in which they have their origin, for the law is no respecter of persons.''

It is fundamental doctrine of the negligence law of this State that as against the primary negligence of the defendant, the contributory negligence of the plaintiff is a complete defense. [Worth v. St. L.-S. F. Ry. Co., 334 Mo. 1025, 1030, 69 S. W. (2d) 672, 674; State ex rel. K. C. Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915, 918.] The rule applies as between parties to suits arising out of collisions at crossings. [Toeneboehn v. St. L.-S. F. Ry. Co., 317 Mo. 1096, 1112, 298 S. W. 795.] Obstruction of view and other circumstances which may tend to increase the hazards and make a crossing more dangerous do not require the railroad to do more than exercise ordinary care, that is, ordinary care commensurate with the circumstances. As was stated in Wright v. St. L.-S. F. Ry. Co., 327 Mo. 557, 566, 37 S. W. (2d) 591, 594, ''The statutory signal is the minimum requirement (on behalf of defendant). If defendant, by obstructions to view and hearing made the crossing more hazardous, it was the duty of both plaintiff and defendant to use such care on approaching the crossing as was commensurate with the increased hazard occasioned by the obstruction. . . . However, a higher degree of care was not required of parties, but to be in the exercise of ordinary care under such circumstances they must on approaching the crossing increase the care commensurate with the hazard of passing over the crossing.'' [See, also, Herrell v. Railroad, 322 Mo. 551, 560, 18 S. W. (2d) 481, 484-485; Hoff v. Wabash Ry. Co. (Mo.), 254 S. W. 874.]

We consider first the duty resting upon the plaintiff as he approached the crossing in question. No facts are stated in respondents' opinion tending to indicate that the crossing was not properly marked or constructed, or that the particular conditions making it dangerous were not open and obvious to one approaching the crossing, and known by plaintiff. The plaintiff as the operator of a motor vehicle was required to exercise the highest degree of care for his own safety. [Sec. 8383, R. S. 1939, Mo. Stat. Ann., p. 5197, sec. 7775.] If, in approaching this crossing, plaintiff's view was obstructed and he was unable to see whether he could pass across in safety, he was required to exercise care commensurate with the circumstances. [Wright v. St. L.-S. F. Ry. Co., supra; State ex rel. K. C. Southern

Ry. Co. v. Shain, supra, 340 Mo. 1195, 105 S. W. (2d) 915, 918, citing cases.] This duty included the duty to stop, if necessary, to look or to listen under circumstances where looking or listening would be effective; if view was obstructed to give more attention to sound, and, to approach at such a speed that he could stop after passing obstructions and before entering within the danger zone. These several rules are well stated in Monroe v. C. & A. Ry. Co., 297 Mo. 633, 249 S. W. 644, 650; Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2d) 185, 187; Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362, 372, 30 S. W. 339, 341; Evans v. Illinois Central Ry. Co., 289 Mo. 493, 233 S. W. 397, 399; Walker v. Wabash Ry. Co., 193 Mo. 453, 480, 92 S. W. 83.

██ The facts stated in respondents' opinion, and the instructions referred to therein, disclose that an issue of fact was made as to plaintiff's contributory negligence in the case considered by them, and that this issue was submitted to the jury, but subject to being disregarded, if defendants' conduct, in the premises, was found by the jury to be malicious, willful, intentional and reckless under the instructions given.

The instructions, referred to in respondents' opinion, show that the issue of malicious, willful, intentional and reckless indifference to the rights of others was submitted to the jury solely upon the basis of defendants' acts and omissions relative to the *maintenance* of the crossing mentioned in the opinion, and particularly with reference to defendants' failure to install at said crossing an automatic electric bell signal or danger lights, or to take other steps to make said crossing reasonably safe for the use of motorists. No issue as to the operation or speed of the train, or as to failure, if any, to give the statutory signals, was submitted to the jury in the instructions with reference to the allowance of punitive damages.

Whether or not a railroad company is guilty of negligence in failing to install automatic electric bell signals or danger lights, or provide watchmen or gates at a county crossing may become an issue of fact upon proper evidence. [Homan v. Mo. Pac. Railroad Co., 334 Mo. 61, 64 S. W. (2d) 617, 622; Welsch v. Hannibal & St. Joseph Ry. Co., 72 Mo. 451, 455, 37 Am. Rep. 440.] Even the question of negligent speed at a railroad crossing is dependent upon the surrounding circumstances. [Toenboehn v. St. L.-S. F. Ry. Co., supra; Herrell v. Railroad Co., supra; Pentecost v. Terminal Railroad Co., 334 Mo. 572, 578, 66 S. W. (2d) 533, 536.]

Viewing the evidence considered by respondents, and in the light of the reciprocal duties of plaintiff and defendants, we find it wholly insufficient to warrant an award of punitive damages. There was no evidence tending to show that defendants' maliciously, willfully, intentionally or recklessly injured the plaintiff. There was no evidence of such a conscious disregard of the rights of plaintiff as to amount to willful and intentional wrongdoing. The evidence was only suf-

188

ficient to show negligence; that defendants had failed to exercise ordinary care to make the crossing reasonably safe. The railroad track was in itself a warning of danger to the plaintiff and the public and defendants, in maintaining the crossing, had the right to assume that plaintiff and other persons approaching the crossing would exercise the degree of care which the law imposed upon them. Since an issue was made and submitted as to plaintiff's contributory negligence at the time and place in question, the jury should not have been permitted to disregard plaintiff's contributory negligence and, upon the evidence stated, to find that defendants by any acts and omission, connected with the maintenance of the crossing, maliciously, willfully and intentionally injured the plaintiff. If plaintiff was guilty of contributory negligence in going upon the crossing there could be no malicious, willful, or intentional conduct on defendants' behalf in maintaining the crossing or in injuring plaintiff, under the facts stated by respondents. "An act cannot be held to be willful, wanton and reckless by only showing a failure to exercise the degree of care due under the particular circumstances. . . . Before a case can be submitted to a jury on the theory that the act complained of was willful, wanton, and reckless, something more than acts heretofore regarded as constituting mere negligence must be shown." [Evans v. Illinois Central Ry. Co., supra.]

We are of the opinion that the only inference which a jury could draw from the circumstances stated by respondents was one of negligence of defendants, that is, a failure to exercise ordinary care commensurate with the circumstances. The facts were wholly insufficient to show malicious, willful, intentional and reckless acts or omissions, or to cut off the defense of contributory negligence. The rule announced by respondents directly conflicts with the rule announced by the court en banc in the case of Evans v. Illinois Central Ry. Co., supra, and the opinion of respondents is quashed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.