## ELIZABETH EVANS v. ILLINOIS·CENTRAL RAIL-ROAD COMPANY, Appellant.

In Banc, July 22, 1921.

1. **TORT: Railroad Train: Unlawful Speed: Wilful, Wanton and Reckless Injury.** The mere act of trainmen in moving a railroad train at a speed of forty or forty-five miles an hour across a much used public street in a densely settled portion of a city where people are likely to use said crossing at any time, without ringing the bell or blowing the whistle, is not sufficient to authorize a submission to the jury of the question whether such act was wilful, wanton, reckless and in conscious disregard of the life and bodily safety of a traveler on such street, there being no showing that the engineer or fireman intentionally ran the train upon such traveler, or saw him approaching the track or in a position of danger or likely to be in such position, or within what distance the train could have been stopped if the traveler had been so seen.

2. ———: ———: ———: **Contributory Negligence.** The acts of the driver of an automobile, in attempting to cross a railroad track in broad daylight at a public crossing where he had reason to expect a train at any moment and where for a distance of fifteen

feet from the track he had an unobstructed view of any train that might be approaching, without looking, and where, if he had looked, he could have seen the train which struck him for a distance of three to six hundred feet, constituted such contributory negligence as would bar a recovery by his widow in an action based on an allegation of negligence. And although the acts of the trainmen in approaching the public crossing at an excessive speed and without blowing the whistle or ringing the bell constituted negligence on the part of the railroad company, such negligence on the part of the traveler would constitute a complete defense to an action based on an allegation of negligence.

3. ———: ———: ———: Wilful, Reckless and Wanton Injury: Definition. Wilfulness implies intentional wrongdoing. A wanton act is a wrongful act done on purpose or in malicious disregard of the rights of others. Recklessness is an indifference to the rights of others and an indifference to whether wrong or injury is done to another. The words "conscious disregard of the life and bodily safety" of another add nothing to the words "wilful, wanton and reckless."

4. ———: ———: Contributory Negligence as Defense: Intentional Injury. Negligence of the injured party is no defense when such injury is intentionally inflicted. But the intention of the engineer to injure a traveler at a public street crossing in a densly crowded city cannot be inferred from the mere fact that the train was run at an excessive speed without ringing the bell or sounding the whistle. Such acts constitute negligence, but they do not alone justify the inference that they were wilfully, wantonly and recklessly done.

5. ———: Contributory Negligence: Recovery for Wanton or Reckless Injury. Where the acts of defendant constitute mere negligence, and the acts of the injured party constitute contributory negligence and a complete defense to an action for negligence, the case cannot be submitted to the jury on the theory that defendant's negligent acts constituted a wanton, wilful and reckless injury. Before a case can be submitted to the jury on the theory that defendant's acts were wanton, wilful and reckless, and therefore that the injury was intentionally inflicted, something more than acts which heretofore have been held to constitute mere negligence must be shown. But such rule does not prevent a showing in any case of acts which of themselves indicate an intentional or wanton injury, or affect the other rule that contributory negligence constitutes no defense to an action for injuries intentionally inflicted.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

REVERSED.

*Watts, Gentry & Lee* for appellant; *John G. Drennan* of counsel.

(1) Defendant's demurrer to the evidence should have been sustained. A plaintiff must prove the cause of action on which he sues. He may not allege one cause of action, wholly fail to prove it, recover upon an entirely different one, and uphold his judgment. Henry Co. v. Citizens Bank, 208 Mo. 209; Canaday v. U. Rys. Co., 134 Mo. App. 282; Marr v. Zeidler, 145 Mo. App. 199. (a) Plaintiff did not base her claim on negligence. She alleged "willful, wanton, reckless and conscious disregard of the life and bodily safety of deceased." She offered no evidence tending to prove such allegations, and proved nothing but a high rate of speed and failure to ring the bell. (b) Both of such acts constitute mere negligence. Lambs v. Mo. Pac. Ry. Co., 147 Mo. 171, 181; Weller v. Railroad, 120 Mo. 635, 653; Laun v. Railroad, 216 Mo. 563, 579; McGee v. Railroad, 214 Mo. 530; Holland v. Railroad, 210 Mo. 338; Eugenia Stotler v. Ry. Co., 200 Mo. 107; Geo. Stotler v. Railroad, 204 Mo. 619; Schmidt v. Railroad, 191 Mo. 215; Prewett v. Eddy, 115 Mo. 283; Payne v. Railroad, 136 Mo. 562; Tanner v. Mo. Pac. Ry. Co., 161 Mo. 497. (c) If an act is negligent it cannot be willful or wanton. Raming v. Met. St. Ry. Co., 157 Mo. 508; Christy v. Butcher, 153 Mo. App. 397; O'Brien v. Transit Co., 212 Mo. 59. (2) Instructions numbered 1 and 2, respectively, were erroneous in that they permitted the jury to find that the rate of speed and the failure to give warning constituted "willful, wanton, reckless and conscious disregard of the life and bodily safety of the deceased," when there was no evidence on which to base such finding.

*Glendy B. Arnold* for respondent.

(1) The judgment of the lower court ought to be affirmed. Lake Shore Ry. Co. v. Bodemer, 139 Ill. 596;

East St. Louis Ry. Co. v. O'Hara, 150 Ill. 580, 585. (2) When the basic facts are admitted to be true, and different intelligent minds may, according to the common experience of mankind, draw different conclusions from them, the case is one for the jury. Baird v. Ry. Co., 146 Mo. 265. The facts are few and simple. (3) Every engineer operating trains over this crossing knows that there are many circumstances under which the driver of a team or an auto truck or a passenger automobile, might drive onto this crossing, in front of a moving train, unconscious of its approach, if no warning is given, without being guilty of contributory negligence. Of course he knows that careless drivers and sometimes even the most careful drivers have momentary mental lapses, are likely to drive onto the tracks oblivious of the approach of a rapidly moving train. When this happens it means almost certain death if the engineer has lost control of his train or fails to give warning signals of its approach. These facts merely accentuate the inherent danger of this crossing. It is used by large numbers of people and some use it cautiously and others carelessly, but whether the one or the other the engineer must look out for all of them. Illinois Central Ry. Co. v. Hutchinson, 47 Ill. 408. The rights of the railroad and the traveling public over this crossing were mutual and reciprocal. Stillson v. Railroad, 67 Mo. 671. Neither had a superior right to the other and neither could require the other to make way for him, and each was required to so use the crossing as to avoid collision. Baker v. Railroad, 140 Mo. 140; Frick v. Railway, 75 Mo. 595. The humanitarian principle imposed a greater amount of caution upon the engineer than upon the ordinary traveler, because a railroad train is the most dangerous vehicle that uses our public highways. Frick v. Railway, 75 Mo. 595. (4) It is now and long has been the settled law in this State that when the motorman of a street car and the engineer of a train, running a car or train over the public streets of a densely populated

city, by reason of darkness or other cause, are unable to discover the presence of vehicles or pedestrians on the tracks at places where it is their duty to anticipate their presence, ordinary care requires them to approach such places with the car or train well under control and to give timely and frequent warnings of its approach. Zander v. Transit Co., 206 Mo. 445; Grout v. Electric Ry. Co., 125 Mo. App. 552. This rule has also applied to drivers of automobiles along public streets. Solomon v. Duncan, 194 Mo. App. 517. They are chargeable by law with knowledge of the presence of persons on or approaching the tracks, at such places, whether or not they actually see or know of their presence there. Frick v. Railway, 75 Mo. 595. In law, constructive knowledge is equivalent to actual knowledge. (5) When approaching a public crossing, in a densely populated section of the city, the necessity for vigilance and caution naturally increases commensurately with the increase in the danger to others lawfully using the crossing. Holmes v. Railway, 207 Mo. 149, 163. Under these rules it was the duty of this engineer to approach this crossing with his train under such control as would enable him to avoid a collision at the crossing by stopping his train, if necessary, or by slackening its speed, or by giving a timely signal of the train's approach. Holden v. Railroad, 177 Mo. 475. (6) The omission of all care for the safety of others at times and places when and where the probability of injury or the loss of human life is remote, is mere negligence, but when the loss of life is the natural or probable result of the omission of due care, it is wantonness and willfulness. I. C. Ry. Co. v. Leiner, 202 Ill. 624. (7) A conscious disregard of human life cannot be inferred from high speed and failure to warn, yet those facts were held by this court amply sufficient to sustain a conviction of manslaughter. State v. Watson, 216 Mo. 420, 435. (8) It may be argued that there is a difference between culpable negligence in the criminal law and wantonness in the law of torts. There

289 Mo.—32

is, but the distinction in name only. The facts that establish the one prove the other. Culpable negligence is more than negligence in the law of torts. State v. Horner, 266 Mo. 109; State v. Emery, 78 Mo. 77; Elgin Ry. Co. v. Duffy, 191 Ill. 489, 492.

DAVID E. BLAIR, J.—Appeal from the Circuit Court of the City of St. Louis. The verdict and judgment there were for respondent in the sum of $10,000.

On April 19, 1916, respondent's husband, Harry Evans, was fatally injured and almost immediately died as the result of a collision between a Ford automobile moving westward and driven by him and a train of appellant, consisting of a locomotive and passengers cars moving northward at the crossing of the terminal railroad tracks over Brooklyn Street in the City of St. Louis. Said Brooklyn Street at this point is a much used public street. The accident occurred in the forenoon. Foster Robbins was riding in the automobile with said Evans as it approached the railroad tracks. The uncontradicted evidence shows that the train was moving at a rate of forty or forty-five miles per hour and that no bell was rung or whistle blown to give warning of its approach. A train could be seen for a distance of several hundred feet south of Brooklyn Street from a point fifteen feet east of the railroad tracks. As soon as Robbins saw the train, which was at that instant almost upon the crossing, he jumped out of the automobile and escaped injury. The automobile was carried on the pilot of the engine about five hundred feet north of the crossing, at which point the train was brought to a standstill. Evans was thrown off a little over three hundred feet north of the crossing.

St. Louis Terminal Railway Company and St. Louis Merchants Bridge Terminal Railway Company were joined as parties defendant. Said defendants filed demurrers to the evidence at the close of plaintiff's case, which were given by the court. Defendant Illinois Central Railroad Company also offered a demurrer to the

evidence at the close of plaintiff's case.   This was re-
fused and said defendant stood on its demurrer.

The amended petition on which the case was tried
was in the form usually drawn in such cases, except that
it did not charge that the acts of defendant were negli-
gent.   Said petition contained the following allegation:

"Plaintiff further states that the death of her hus-
band, Harry Evans, as aforesaid, was caused by de-
fendants' wilful, wanton, reckless and conscious disre-
gard of the life and bodily safety of the deceased in this,
to-wit, that with knowledge that the crossing of said
tracks with said Brooklyn Street was much used for
travel and was dangerous to travelers using the same,
the defendants ran said train to and over said Brooklyn
Street and onto and against the deceased at a speed of
from forty to forty-five miles per hour, without giving
the deceased any warning of the approach of said train."

Appellant filed an answer containing a general denial
and an allegation as follows:

"Further answering, this defendant says that the
death of Harry Evans, referred to in plaintiff's second
amended petition, was caused by his own negligence di-
rectly contributing thereto, in this, to-wit:.

"That on the occasion referred to in · plaintiff's
second amended petition the said Evans negligently and
carlessly drove an automobile upon the railroad track di-
rectly in front of the train operated by the defendant
Illinois Central Railroad Company, and so near to said
train that it was impossible, by the exercise of ordinary
care on the part of said defendant, to stop said train
after the appearance of said Evans upon and near said
track, and, in so driving upon said track, the said Evans
negligently and carelessly failed to look and listen for the
approach of trains, and negligently and carelessly failed
to avoid being struck by trains."

The portion of said answer above quoted was stricken
out on plaintiff's motion on the ground that the same
constituted no defense to the cause of action set forth
in plaintiff's petition.

At the request of respondent the court gave Instruction 1, detailing the facts necessary for the jury to find to authorize a verdict for respondent. It is unnecessary to quote it in full. It concludes as follows:

"That under all the facts and circumstances, as shown by the evidence, the running of said train over said Brooklyn Street at said speed, if you so find, was a wilful, wanton, reckless, and conscious disregard by the servants of said defendant in charge of said train of the life and bodily safety of the deceased, and directly caused or directly contributed to the cause of the death of the deceased, then your verdict will be for the plaintiff, and against said defendant Illinois Central Railroad Company."

Instruction 2 given at the request of the respondent is as follows:

"The court instructs the jury that the plaintiff is not entitled to recover in this case on the ground of mere negligence on the part of the defendant's servants in charge of said train, but before you can find for the plaintiff you must believe and find from all the evidence that the conduct of the defendant's servants in the running and operation of said railroad train at the time and place mentioned in the evidence was characterized by a wilful, wanton, reckless, and conscious disregard of the life and bodily safety of the deceased, and unless you so find, your verdict must be for the defendant."

Thus it is clear that the theory on which the case was tried below was that the mere act of the servants of defendant, in moving its train at a speed of from forty to forty-five miles per hour over tracks laid in a public street and across another much used public street and in a densely settled portion of the city where people are likely to use said crossing at any time, without ringing the bell or blowing the whistle, is sufficient to authorize submission to the jury of the question whether such act was wilful, wanton, reckless and in conscious disregard of the life and bodily safety of respondent's husband, without showing that the engineer or fireman inten-

tionally ran said train upon respondent's husband, or saw him approaching the track or in a position of danger or likely to be in such position of danger, or within what distance such train could have been stopped if deceased had been seen in a position of peril and oblivious to such peril. No evidence was offered tending to show that the engineer or fireman saw deceased or intentionally ran said train upon him or what they were doing as the locomotive approached the scene of the accident or what could have been done by them to prevent collision.

The acts of respondent's husband, as shown by the evidence before us, in attempting to cross the railroad tracks in broad daylight at a point where he had reason to expect trains at any moment and where he had an unobstructed view of any trains that might be approaching the crossing, without looking for a train or where, if had looked, he could have seen the train approaching for a distance of three to six hundred feet, constituted negligence on his part that would bar a recovery by his widow in an action based on an allegation of negligence. [Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Huggart v. Railroad, 134 Mo. 673; Stotler v. Railroad, 204 Mo. 619.]

It appears from the evidence that a great many trains moved over these tracks. One witness estimated the number at one hundred daily. At and from a point about fifteen feet from the track deceased could have seen the train coming if he had looked. There was no obstruction to the view. No reason why the approaching train could not have been seen is given. Robbins testified that deceased was looking directly ahead when he first looked to the north. This was at a point where the train could be seen. When he looked to the south and instantly saw the approaching train deceased was then looking south also. The top of the automobile was up, but the side curtains were not on and there was nothing in the car itself to obstruct the deceased's view. The automobile was moving up grade in low gear at a speed of five to six miles per hour. Deceased could have

stopped it almost immediately. It was his duty to approach the crossing at such speed that he could stop after reaching a point where he could see the approaching train and before coming within the danger zone.

This court has never passed on the question involved here. Respondent cites cases from other jurisdictions tending to support her contention that wanton and wilful conduct can be inferred from such facts as are here proven and under such circumstances as existed here without showing the actual conduct of the engineer and fireman further than the speed of the train and failure to give warning. We have repeatedly held that the acts of servants of a railroad company in approaching a public highway crossing at excessive speed and without blowing the whistle or ringing the bell, even when such crossing was in a congested district in a city, constitute negligence, and that negligence of the injured party contributing to the injury is a defense. This has been held in many cases, such as Stotler v. Railroad, 204 Mo. 619; Hafner v. Transit Co., 197 Mo. 196; Green v. Railroad, 192 Mo. 131. The act cannot be both negligent and intentional at the same time. Such allegations are inconsistent. [Raming v. St. Ry. Co., 157 Mo. 477, l. c. 508; O'Brien v. Transit Co., 212 Mo. 59.]

In Hinzeman v. Railroad, 182 Mo. l. c. 623, in discussing the words "wilful, wanton and reckless," VALLIANT, J., said:

"Among the instructions given for the defendant was the following:

" '4. Unless the jury believe from the greater weight of the evidence that the defendant's engineer in charge of the locomotive which struck the deceased, willfully, wantonly or recklessly ran deceased down and killed him, your verdict must be for the defendant.'

"The trial court assigned the giving of this instruction as its reason for sustaining the plaintiff's motion for a new trial. The learned trial judge was right in condemning that instruction.

"If the engineer saw the man in a position of danger, apparently inattentive to the approaching train, and if, with the means at hand, by the exercise of ordinary care, he could have given him timely warning, yet neglected to do so, then the case falls within the exception to the rule that a plaintiff can not recover if his own negligence has contributed to his injury. In discussing that exception to the general rule the courts have characterized the conduct of an engineer under such circumstances as reckless, wanton or willful; but those are words of characterization expressing a conclusion, a judgment; the fact upon which that conclusion is based is the neglect of the engineer under the given circumstances to exercise ordinary care with the means at hand to avert injury."

Wilfulness implies intentional wrongdoing. A wanton act is a wrongful act done on purpose or in malicious disregard of the rights of others. Recklessness is an indifference to the rights of others and an indifference to whether wrong or injury is done or not. As we understand the words "conscious disregard of the life and bodily safety" they add nothing to the words "wilful, wanton and reckless" and are included within the meaning of those words. As applied to an act they necessarily mean that such act was intentionally done without regard to the rights of others and in full realization of the probable results thereof.

Negligence of the injured person is no defense when such injury is intentionally inflicted. [Raming v. St. Ry. Co., 157 Mo. l. c. 507, citing and quoting approvingly from 1 Shear. & Redf. on Neg. (5 Ed.) sec. 64.]

All that is shown here is that the train was moving at a high rate of speed and without warning toward and over a busy public street. It is not shown that people were on the crossing in a position of peril as the train approached or that the engineer or fireman saw the deceased at all. There is ample evidence of negligence, but the engineer had the right to assume that even though he was negligent the deceased would not be injured there-

by, because deceased himself would not be expected to come on the track in front of the train without himself exercising proper care. The railroad track was in itself a warning of danger to the public and the engineer had the right to assume that persons approaching such track would use due care. In other words, although negligent, such engineer is not shown to have been acting in such conscious disregard of the rights of deceased as to amount to wilful or intentional wrongdoing.

This is not like a case where one drives an automobile at high speed through a densely crowded street when he knows that people are upon and crossing the street and exposed to danger and likely to be struck by his automobile moving at such high speed. Such an act under such circumstances could well be held to be criminal negligence. The law would read into his act an intention to injure. The same act in the dead hour of the night when the same street was presumably clear would be nothing more than negligence for which a civil action only would lie.

Respondent has failed to show that appellant wilfully, wantonly and recklessly caused the death of her husband. The only inference the jury was entitled to draw from the evidence was negligence on the part of appellant. An act cannot be held to be wilful, wanton and reckless by only showing a failure to exercise the degree of care due under the particular circumstances. Nothing more is shown here.

We have carefully considered the cases from other jurisdictions relied on by respondent. We are not prepared to follow those cases and to depart from the rule well established in this State that the character of acts here discussed merely constitute negligence. Before a case can be submitted to a jury on the theory that the act complained of was wilful, wanton and reckless, something more than acts heretofore regarded as constituting mere negligence must be shown. To rule that intentional injury may be inferred from such facts as are before us in this case would overwhelm our courts with a flood of

perjured testimony, as the procuring of a witness to
swear that any train was moving at high speed without
warning when the accident occurred at a railway cross-
ing in a densely settled city would present no practical
difficulty to unscrupulous litigants or counsel of like char-
acter. If wilful, wanton and reckless conduct may be
inferred from the proof of such facts a further difficulty
presents itself. What speed would justify the trial court
in submitting such question to the jury? A speed that
would appear to one trial judge to be wilful, wanton and
reckless, signifying intentional wrongdoing, might ap-
pear to another judge as being evidence of nothing more
than mere negligence. No two judges would agree when
and under what circumstances failure to give warning
would authorize the submission of such question. Such
a rule would undoubtedly result in chaos in the law gov-
erning crossing cases and in such cases effectually de-
stroy the salutary rule that one whose own negligence
contributes to his injury cannot recover for the negli-
gence of another also contributing to such injury. The
rule we have here announced will not prevent the show-
ing in any case of acts which themselves indicate an inten-
tional or wanton infliction of injury or affect the rule that
contributory negligence constitutes no defense to inten-
tional infliction of injury.

Assuming that the petition here either is now suf-
ficient or can be so amended as to support a recovery on
the ground of negligence, should the case be remanded
for a new trial? The evidence now before us shows con-
tributory negligence on the part of deceased as a matter
of law, which is a complete defense as against a charge
of mere negligence. As we understand the case all the
persons who saw the accident testified at the trial and it
is not shown that other or further testimony on the ques-
tion of deceased's conduct at the time of the accident is
available. Neither does it appear that any acts of the
servants of defendant, other than already appearing in
the record, can be shown. A retrial would therefore be
useless.

For the reasons set forth, the judgment of the trial court is reversed. *Graves, Higbee, Elder* and *Walker, JJ.,* concur; *J. T. Blair, C. J.,* concurs in the result; *Woodson, J.,* dissents.