James **GRIESENAUER** and Betty Griesenauer, Plaintiffs-Respondents,

v.

**EMSCO CORPORATION**, Defendant-Appellant.

No. 32070.

St. Louis Court of Appeals.

Missouri.

Jan. 18, 1965.

Donald E. Dalton, St. Charles, for defendant-appellant.

George E. Sullivan, O'Fallon, for plaintiffs-respondents.

ANDERSON, Judge.

This is an action for damages for trespassing on plaintiffs' land and constructing a ditch thereon without the consent of plaintiffs. There was a verdict for plaintiffs in the sum of $700.00 and defendant has appealed from the judgment entered. It is contended that plaintiffs did not make a submissible case; that Instruction No. 2 was erroneous, and that the verdict was excessive.

The petition alleged that they were the owners of a tract of land in the City of O'Fallon in St. Charles County known and numbered as 506 Westridge Drive (described by metes and bounds); that during the first week of August 1962, defendant, (a Corporation) through its agent and servant, G & P Ditching Company, entered upon said land and caused a deep ditch to be dug along the south and east edge of said property; that the ditch along the east edge of plaintiffs' property was from four feet deep and three feet wide, very unsightly and dangerous and has diminished the value of plaintiffs' property; that because of said excavation surface water

which normally flows across plaintiffs' property is causing erosion of earth adjacent to and in the ditch resulting in further damage and causing said ditch to become deeper and wider; that as a result of defendant's acts there has been created a condition dangerous to plaintiffs, plaintiffs' children, neighbors and their children and to the public generally.

It was further alleged that said ditch was excavated without the consent of plaintiffs. Damages were averred in the sum of $7,500, for which amount judgment was prayed.

In defendant's answer its corporate existence was admitted. It was further averred that whatever digging or ditching was done on plaintiffs' property was with the consent of and by agreement with plaintiffs. All other allegations of the petition were denied.

Plaintiffs are the owners of property located at 507 Westridge Drive in O'Fallon, Missouri. It is in a subdivision known as Westwood Acres. This subdivision was developed by the defendant Emsco Corporation. Plaintiffs purchased the property from John McLean and wife in July or August 1958. The McLeans had purchased same from Emsco Corporation. The property consists of a dwelling house situated on a lot 150 feet deep and 100 feet wide. Plaintiffs erected the house and moved into it in November 1958. The house faces west. The basement level was set six inches above the low level of the rear of the lot. Mr. Griesenauer had graded the front yard and deposited approximately six loads of dirt into the southwest corner of his lot. There is a 10 or 14 inch culvert under the street in front of plaintiffs' house which leads to the southwest corner of plaintiffs' property. It is two and one-half to three and one-half feet beneath the street. The water from the west side of the street flows through this culvert onto plaintiffs' lot at its southwest corner.

In October 1958, plaintiffs were working in the house when an unusually heavy rain occurred. Mr. Griesenauer testified that was the first time he became aware of a surface water problem on his property; that he looked out the window and saw water coming from across the street onto his property at the southwest corner. It flowed eastwardly until it reached the rear of his house, then cut across the yard, flowing generally over the entire back yard. He stated the water did not run into the basement through the rear door on the east side. He further testified he did not know of the existence of the culvert until the big rain came. He discovered it the next day. On that day he went to see Mr. Emge, an officer of defendant Emsco Corporation and informed him that he had a terrific amount of water coming through his yard, and asked Emge if he could correct it in any way. Mr. Emge replied that he would take care of it; that something should be done about it; that there was too much water there. Mr. Griesenauer had several talks thereafter with Mr. Emge about the matter and each time Mr. Emge would say, "We will be doing something about it."

In the early spring of 1962, probably in April of that year, Mr. Griesenauer was contacted by Mr. Emge who presented a paper to Mr. Griesenauer to sign, which the latter signed. This paper was not introduced in evidence, but Mr. Griesenauer testified that Mr. Emge was to construct a ditch along the southside of his property and another from the southeast corner to the northeast corner of his lot. He further testified that the ditch was to be "swailed" out and "he was to sow grass seed in it. I told him grass seed would not hold up if we had a rain and that I wanted it sodded, so he changed the grass seed to sod, and I signed the paper for him to go ahead and get a man in there to work on the ditch."

Defendant employed the O'Fallon Asphalt Paving Company, which was owned by Ben Luetkenhaus, to do the work. Mr. Luetkenhaus came to plaintiffs' premises and informed Mr. Griesenauer that he was going to start the work, and Mr. Griesenauer told him: "that was fine, that I was glad that something was being done about it." Short-

ly thereafter Mr. Luetkenhaus began work on the ditch. While Mr. Luetkenhaus was there either doing the work or in the process of starting it, Mr. Griesenauer had another conversation with Mr. Emge concerning the ditch. He told Mr. Emge he was glad to see something being done. He further stated: "I was informed that the ditch would run down to the end and then down the back of my property line."

Mr. Griesenauer testified that Mr. Luetkenhaus started at the culvert, and in order to get to the bottom of the culvert, had to dig four or five feet below the level of the front yard; that Mr. Luetkenhaus "shot the grades" and came up with the figure that by the time the ditch along the south side reached the end of the lot, the ditch would. be approximately three feet deep in order for the water to flow away; that the ditch between his neighbor's house and his own would be five or six feet deep.

Griesenauer testified that on a visit by Mr. Emge to the property, he was told by Mr. Luetkenhaus that the ditch would be too deep and unsightly and it would be necessary to put a pipe in and cover it. That same day or a day or two afterwards, Mr. Griesenauer told Mr. Luetkenhaus that he would prefer a tile pipe there; that it could be covered up and he would end up with a decent yard. Mr. Emge testified that it was agreed that defendant would pay for the pipe to the back of Mr. Griesenauer's house; that Mr. Griesenauer agreed to pay for the rest of it, and defendant would pay for the installation of it, and that Mr. Griesenauer agreed to put some concrete blocks at the east end of the pipe so that the water would be dispersed across the end of the lot. At this time Mr. Luetkenhaus was replaced by the G & P Ditching Service. This concern was a partnership, the members thereof being Paul Joseph Peine and one Grabenhorst. Mr. Peine took charge of the work of digging the ditch and putting in the tile. During the noon hour the day Mr. Peine started, Mr. Griesenauer had a conversation with Mr. Peine. At that time the work of digging the ditch and putting in the tile had progressed for approximately two-thirds the length of the south boundary line. Mr. Griesenauer, at that time, had occasion to look at and inspect the work already completed. Mr. Griesenauer stated that when he came home from work that evening the work was almost to the eastern edge of the property. Mr. Peine dug the ditch across the back of the lot. He stated that the only way for the water to drain off the property was to dig a ditch across the back of the lot. Mr. Emge sent word to Mr. Peine through one of the latter's men not to go around the corner with the tile unless he found out who was going to pay for it. Obviously Mr. Emge, representing defendant did not intend to pay for the tile across the rear of the lot. Griesenauer testified he did not agree to pay either defendant, G & P Ditching Company or Emge for any part of the work done on his property. The ditch at that time was already dug across the back of the lot. Mr. Peine stated that if he had not stopped when he did he would have "made the corner and tiled it with another fifty or one hundred foot, whatever it took to run the water around the corner off of the Griesenauer property down the natural drainage." The evidence shows that the lot drops off to the north and the natural drainage is toward the northeast corner and beyond. The pipe which was laid by Mr. Peine starts at a catch basin near the southwest corner of plaintiffs' lot, and runs along the south property line almost to the rear of the property. Water passing through the pipe flows into the open ditch where it is dispensed across the yard to the northeast corner then off plaintiffs' property. The end of the drain tile at the back of plaintiffs' lot is approximately three feet below the level of the ground at that point. Griesenauer testified that at present the deepest part of the ditch is 3½ feet which extends for about twenty to twenty-five feet down the rear of the property, then, becomes shallow and extends for an additional 82 feet. Its deepest part is 8 to 10 feet wide and where it becomes 1½ to 2 feet deep, it is 3 to 4 feet wide.

Plaintiffs' Instruction No. 1, which was a verdict directing instruction, charged the jury that if they found from the evidence that defendant through its agent and servant, G & P Ditching Company entered upon plaintiffs' property and dug the ditch without the plaintiffs' permission, and suffered damage as a direct and proximate result thereof, the verdict should be for plaintiffs and against defendant.

On this appeal it is urged that the Court erred in refusing to sustain defendant's motion for a directed verdict for it at the close of all the evidence for the reason that plaintiffs failed to show that defendant's entry upon their land and the digging of the ditch was without their consent, but on the contrary plaintiffs' own testimony showed consent to said acts.

This is a civil action to recover damages for injury to plaintiffs' land as a result of an alleged wrongful entry thereon by defendant and the digging of a ditch across the rear of plaintiffs' lot, without plaintiffs' consent. Such was the action stated in the petition and submitted by plaintiffs' verdict directing instruction. At common law, the action would be classified as an action of trespass, but under modern statutes it is deemed a civil action for tort. However, the statute abolishing common law forms of action do not apply to matters of substance, and the fundamental requirements on which a right to recover remain the same as they were prior to the enactment of said statutes. Therefore, we must apply the principles governing the right to recover in trespass, as developed by the common law to the problem now before us.

The principle is elementary that trespass lies whenever an injury to plaintiffs' property against his will, is the immediate result of a forceful, unlawful or wrongful act by a trespasser. In such cases the entry on the plaintiffs' land may be wrongful or, if made with the consent, liability may arise where the scope of the license or consent is exceeded or abused, 87 C.J.S. Trespass, § 14, p. 967; and then only for acts committed in excess of such authority, 87 C.J.S. Trespass, § 17, p. 969; or for acts done after the license or consent is revoked. But where there is consent to enter the premises and perform the acts complained of, there can be no liability, 87 C.J.S. Trespass § 49, p. 1003; nor does a mere breach of an agreement by one lawfully on the premises constitute a trespass. 87 C.J.S. Trespass § 12, p. 965.

In the case at bar, it appears from plaintiffs' own testimony that defendant's entry on plaintiffs' land and the digging of the ditch along the east boundary line of his lot was by consent. Nor is it shown that this license or consent was ever at any time revoked, or that defendant went beyond the scope of his license by any act performed on the premises. In our opinion, the trial court erred in not directing a verdict for defendant. It is therefore not necessary to pass upon the other points raised on this appeal by appellants.

The judgment is reversed.

WOLFE, P. J., and RUDDY, J., concur.