Ann ENGMAN and Walter Engman and Nora Engman, by and through their next friend, Ann Engman, Appellants,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Respondent.

No. KCD 29921.

Missouri Court of Appeals, Western District.

Oct. 29, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 3, 1979.

Application to Transfer Denied Jan. 15, 1980.

Tom B. Kretsinger, Kansas City, for appellants.

Thomas E. Allen, Liberty, J. Curtis Nettels, James E. Taylor, Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

Ann Engman filed suit individually and as next friend for her children Nora and Walter against Southwestern Bell Telephone Company for invasion of privacy. The Engmans and Bell filed motions for summary judgment and the court sustained Bell's motion and overruled the Engman motion. Engman appeals the granting of Bell's motion. The Engmans now contend their petition stated a cause of action for invasion of privacy and the tariff relied upon by Bell was not a defense as a matter of law. Reversed and remanded.

Engman first filed suit in 1975, and filed an amended petition in two counts in 1977. The first count alleged that Ann Engman was a subscriber of Bell and received telephone service for a number of years, that in March, 1975, Ann became delinquent in the payment of her bills to Bell and her service was discontinued. Bell notified her that her telephone equipment would be removed if the bills were not paid by a day certain. The petition continued that about 9:30 A.M. on April 7, 1975, Nora Engman missed school and was at home sick in bed when an employee of Bell appeared at her bedroom door and stated he was there to take out the telephones. It was alleged the employee had not attempted to advise Engman that he was coming nor did he knock at the front door of the Engman apartment before he entered. The petition alleged the entry of the Bell employee constituted a trespass and an invasion of the privacy of the Engman home and caused Nora and Ann Engman humiliation, embarrassment, annoyance and exposed them to public contempt and ridicule. The petition alleged the acts of the Bell employee were willful, wanton, reckless and malicious and prayed for actual and punitive damages.

The second count in the Engman petition made the same allegations with reference to Ann Engman subscribing to telephone service from Bell. It was alleged the Engman telephone service was suspended in May, 1977, for non-payment of her bill and she was notified in early May that if her bill was not paid by a date certain the telephone equipment would be removed from her premises. The petition continued that on May 12, 1977, Walter Engman was in bed in the family apartment when he

was awakened at 2:30 P.M. by an employee of Bell who informed him he was there for the purpose of removing the telephone equipment. It was alleged the Bell employee did not attempt to advise Ann Engman of his intent to enter the apartment nor did he knock on the door before entering. It alleged the first Walter knew of the presence of the Bell employee was when he was touched sharply on the foot by the employee and he awoke. It was alleged the Bell employee committed a trespass and invaded the privacy of the Engman home. It was alleged the entry by the Bell employee invaded the privacy of both Walter and Ann and caused both humiliation, embarrassment, annoyance, disgrace and exposed both to public ridicule. The conduct of Bell was termed unwarranted, willful, intentional, malicious, without just cause or excuse, and the prayer was for both actual and punitive damages.

Bell's answer relied principally upon a tariff filed with the Public Service Commission which Bell alleged granted to it a license coupled with an interest to enter the Engman apartment for the purpose of removing its telephone equipment. The tariff relied upon by Bell was as follows:

Ownership-Equipment, instruments and lines on customers premises, furnished by the Telephone Company, shall be and remain the property of the Telephone Company, whose agents and employees have the right to enter said premises at any reasonable hour for the purpose of installing, inspecting, maintaining or repairing the equipment, instruments and lines for the purpose of making collections from coin boxes and, upon termination of service, for the purpose of removing such equipment, instruments and lines.

Depositions of all the Engmans and Thomas Singleton, the Bell employee who entered the Engman apartment on both occasions to remove the telephone equipment, were taken and filed. There is no doubt Singleton entered the Engman apartment and removed the telephone equipment in both 1975 and 1977. The parties appar-

ently felt the primary issue to be resolved was whether the tariff gave Singleton the right to enter the apartment even if the Engman version that he did not knock or obtain permission to enter on either occasion be accepted. The Engmans took the position the tariff did not authorize Singleton's entry, but even if it did, he committed a trespass under § 560.447, RSMo 1975 Supp. Bell contended the tariff raised a bar to the Engman action with the result the respective motions for summary judgment were presented for the purpose of resolving the tariff defense. The court overruled the Engmans' motion and sustained Bell's motion without elaboration.

On this appeal the parties continue to maintain the positions they assumed in the trial court. The effect of the tariff was decided in *Warner v. Southwestern Bell Telephone Company,* 428 S.W.2d 596 (Mo. 1968). In that case the court considered the defense of a tariff limitation on the amount of damages which could be recovered for erroneous listings in the directory. The court held the Public Service Commission has the authority to determine the reasonableness of the rates and regulations and limitations promulgated by Bell and its determination in that regard may only be reviewed in the method provided by statute. The court held, however, that "[t]he courts have jurisdiction of a suit for damages based on negligence in which a determination of the legal validity and the applicability of such provisions to a given state of facts is required." 428 S.W.2d 602[9–11]. Under this holding the legal validity and applicability of the tariff raised as a bar to the Engman action by Bell is to be determined by the courts. *Warner* further held " '[a] bargain for exemption from liability for the consequences of a willful breach of duty is illegal, * * * ' " and "[w]e conclude that the limitation of defendant's liability was and is effective if defendant's conduct was merely negligent, but that it does not constitute an exemption for willful and wanton conduct." 428 S.W.2d 603[12–14].

■ It is clear from *Warner* that Bell's tariff in this case would exempt it from liability for negligence but not for willful and wanton conduct. "Willfulness implies intentional wrongdoing. A wanton act is a wrongful act done on purpose, or in malicious disregard of the rights of others." *Evans v. Illinois Cent. R. Co.*, 289 Mo. 493, 233 S.W. 397, 400[3] (banc 1921). Thus, willful and wanton conduct as used in *Warner* refers to an intentional act.

The question in this case hinges on whether the conduct of Singleton in entering the apartment may be termed willful and wanton or in other words intentional, or merely negligent. This question was answered in *Gonzales v. Southwestern Bell Telephone Company*, 555 S.W.2d 219 (Tex. Civ.App.1977), where the court held a Bell employee's entry into a private residence without the occupant's permission in order to remove telephones was a willful tort of invasion of privacy. Gonzales had become delinquent in his telephone bill and a Bell employee was dispatched to remove the telephone equipment from the Gonzales home. When the employee arrived, no one was home, so he opened the front door and entered the home where he removed a telephone from the hallway and one from the bedroom. The employee stated he was in the house approximately three minutes. Gonzales filed suit for invasion of privacy and the court held the entry by the Bell employee into the Gonzales home without permission was a willful tort of invasion of privacy.

■ This court agrees with *Gonzales*. Here the Engmans' allegation that the telephone employee entered their apartment without permission is a sufficient allegation of intentional conduct or willful invasion of privacy. Thus the tariff in this case, which protects Bell only against negligent conduct, did not constitute a bar to the Engmans' action because the petition alleged a willful or intentional invasion of privacy.

*Gonzales* cannot be distinguished from the present case on the basis of disputed testimony as to whether the employee broke the Gonzales door to gain entry. Gonzales testified the employee did not have permission and that issue was submitted. The issue in that case was whether the employee had the owner's permission to enter, the method of entry being only incidental.

■ Summary judgment is not appropriate if there is any theory within the scope of the pleadings or in the broad scope of probable evidence as revealed by the depositions filed which, if believed by the trier of fact, would authorize a recovery. *Scott v. Thornton*, 484 S.W.2d 312, 314[5, 6] (Mo. 1972). In this case the Engmans relied principally upon a theory of invasion of privacy. This theory was recently recognized by this court in *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212, 215[6] (Mo.App.1978). This court recognized an unreasonable intrusion upon the seclusion of another constitutes an invasion of privacy. This court held "[t]o make a submissible case of intrusion upon seclusion, plaintiff must prove three elements: (1) the existence of a secret and private subject matter; (2) a right possessed by plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter by defendant through some method objectionable to the reasonable man."

■ Engman's petition did state a cause of action for invasion of privacy for unreasonable intrusion upon the seclusion of another. The existence of the Engman apartment and the right of the Engmans to keep that place of abode private satisfies the first two elements. The obtaining of information about the abode by Singleton when he entered was held by *Gonzales* to satisfy the third element when the court stated, "[t]here is no question that the telephone company's employee saw whatever there was to see in the plaintiff's bedroom and the other areas of their home. Whatever there was to see was the private property of the plaintiffs." 555 S.W.2d 222[2]. The petition pleaded facts sufficient to demonstrate the method employed to invade the Engman privacy was objectionable to the reasonable person.

Because the petition stated a cause of action for invasion of privacy there is no need to explore the alternate theory that Singleton was guilty of trespass.

One further question remains concerning punitive damages. It is well settled that punitive damages may be awarded upon a showing that a party intentionally committed a wrongful act without just cause or excuse. *Murski v. Sportsman Cycles, Inc.*, 559 S.W.2d 67, 68[2, 3] (Mo.App. 1977). The tariff does not protect Bell against punitive damages because it does not protect against intentional acts.

The court was correct in overruling Engman's motion for summary judgment because they must now prove the cause of action alleged. The court erred in sustaining the motion for summary judgment filed by Bell, and, therefore, that judgment is reversed and the cause remanded.

PRITCHARD, J., concurs in separate concurring opinion.

SOMERVILLE, P. J., dissents in separate dissenting opinion.

PRITCHARD, Judge, concurring.

I concur fully in the opinion of Turnage, J., in its holding that plaintiffs stated a cause of action for the tort of willful invasion of their privacy by defendant in entering their home for the purpose of removing telephones. What the dissenting opinion herein does is to grant defendant an absolute defense of a license to enter plaintiffs' abode in violation of their well established right of privacy—the right to be free of physical intrusion into their premises. See the discussion of this right, Hofstadter and Horowitz, "The Right of Privacy," § 9.1, p. 95, and the case examples there set forth. See also 77 C.J.S. Right of Privacy, § 1, et seq., p. 396, et seq.; and the numerous examples of "Privacy Inhering in the Place", p. 31, et seq., "The Right to Privacy", Dionisopoulos and Ducat.

*Barber v. Time, Inc.*, 348 Mo. 1199, 159 S.W.2d 291 (1942), was a case involving violation of plaintiff's right of privacy in the publishing of an article. The court

went on to discuss that right, saying at page 294[6], "The basis of the right of privacy is the right to be let alone", and the court further went on to say that the right grows out of a constitutional right, to be weighed against the defendant's claim of the constitutional right of freedom of the press. See *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212 (Mo.App.1978), holding that there was no submissible case against Bell because there was no publication by it, but holding that a submissible case was made against defendant Corcoran upon the basis of intrusion upon seclusion, which requires no publication to establish the tort.

In the posture of this case, plaintiffs had the right of privacy, of seclusion, in their own home. The tariff provision which the dissent would hold grants a license (could it be an unlimited license?) to defendant to enter a private residence to remove an unpaid-for telephone, cannot supersede the private constitutional right to privacy in one's abode. The right of defendant to enter a home to remove a telephone must be tempered upon reasonableness of time of entry, upon reasonable notification, and if permission to enter is denied, upon defendant's resort to other remedies at law to secure to it the repossession of its property. Note the case of *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), holding that buyers under conditional sales contracts are entitled to notice and an opportunity to be heard before seizure of property in their possession, the Florida and Pennsylvania prejudgment replevin statutes (struck down), allowing summary seizure of a person's possessions when no more than private gain is at stake. The matters postulated by plaintiffs' pleadings require submission of the issue to the trier of the fact.

*Weber v. Indiana Bell Telephone Company*, 343 N.E.2d 786 (Ind.App.1976), relied upon in the dissent as creating a license to enter a subscriber's premises, did not involve facts of entry without permission into one's private residence, where it might be expected that one would be safe from intru-

sion, but only upon entry upon the land for the purpose of installing underground cable service to Weber's telephone. The suit was brought in trespass and for negligence, not for the tort of invasion of privacy, and it is notable that the court remanded the case for a determination of the damages to the land, a situation not unlike plaintiffs' claims for damages for the alleged willful invasion of their right of privacy of their abode. The Weber case is thus no authority for defendant's summary exercise of a purported unlimited license to remove its telephones from the residences of unpaying subscribers.

SOMERVILLE, Presiding Judge, dissenting.

I respectfully dissent.

As pointed out in the majority opinion, both counts of Engmans' amended petition are posited upon the theory that in entering the apartment to remove the telephone equipment (for non-payment of service) Bell's serviceman committed a trespass, and that doing so constituted a willful and wanton invasion of the Engmans' right of privacy.

Notwithstanding the existing tariff provision,[1] the majority opinion, as best comprehended, concludes that since Bell's serviceman intentionally entered the apartment,[2] doing so constituted a willful and wanton trespass, and, relying upon *Warner v. Southwestern Bell Telephone Company,* 428 S.W.2d 596 (Mo.1968), that the tariff provision did not insulate Bell from the willful and wanton conduct committed by its serviceman as opposed to insulation from negligent conduct. In support of its conclusion that the conduct of Bell's serviceman in "entering" the apartment should be legally characterized as willful and wanton conduct, the majority opinion drew heavily

upon *Gonzales v. Southwestern Bell Telephone Company,* 555 S.W.2d 219 (Tex.Civ. App.1977). Suffice it to say, no tariff provision was involved in *Gonzales,* much less a tariff provision similar to the one at hand.

*Warner v. Southwestern Bell Telephone Company, supra,* heavily relied upon in the majority opinion, holds at p. 601, with respect to a general tariff provision appertaining to customer contracts, that such "when . . . filed under authority of law, and unless found to be unreasonable . . . become a part of the law . . . [and] [i]n this view it makes no difference whether the customer knows of the limitation [tariff provision] or not." Engmans have failed to cite any Missouri cases judicially denouncing the instant tariff provision as being "unreasonable".

It is the opinion of this writer that the tariff provision at hand granted Bell a license to enter the Engman apartment for the purpose of removing its equipment upon Engmans' failure to pay for telephone services rendered. This opinion finds legal support in the remarkably analogous case of *Weber v. Indiana Bell Telephone Company,* 343 N.E.2d 786 (Ind.App.1976), wherein the Court of Appeals of Indiana, First District, construed a substantially similar tariff provision as granting a telephone utility a license to enter a customer's premises for purposes delineated in the tariff provision there under judicial scrutiny.

This state has long been committed to the legal principle that an action for trespass will not lie if the alleged trespasser has a license to enter the premises. *Seifert v. Withington,* 63 Mo. 577, 579 (1876). A recognized exception exists, and properly so, if a licensee exceeds or abuses the scope of his license, *Griesenauer v. Emsco Corporation,* 399 S.W.2d 147, 151 (Mo.App.1965), an un-

---

1. "Ownership-Equipment, instruments and lines on customers premises, furnished by the Telephone Company, shall be and remain the property of the Telephone Company, whose agents and employees have the right to enter said premises at any reasonable hour for the purpose of installing, inspecting, maintaining or repairing the equipment, instruments and lines

for the purpose of making collections from coin boxes and, upon termination of service, for the purpose of removing such equipment, instruments and lines."

2. Engmans do not contend that Bell's serviceman entered the apartment at an unreasonable hour.

pleaded theory insofar as the instant case is concerned.

In the ordinary course of events it is quintessential to the exercise of a license to enter the premises of another that the entry be intentional. It defies legal imagination to characterize such intentional entry as willful and wanton conduct within concepts of tort law addressing intentionally inflicted injuries.

I would affirm the judgment of the trial court.